21 Civ. 10832 (LAK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCISCO JAVIER CASABLANCA-TORRES,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, 4th Floor*
*New York, NY 10007*

*By: Andrea Osgood*
*Tel: (212) 356-2424*
*Matter No.:  2021-002033*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

STANDARD OF REVIEW ............................................................................... 3

ARGUMENT

      POINT I

            ANY CHALLENGE TO THE CURFEW EMERGENCY EXECUTIVE ORDER FAILS AS A MATTER OF LAW. ..........................................................4

      POINT II

            PLAINTIFF'S REMAINING MONELL CLAIMS ALSO FAIL. ........................................................................8

            A.    Irrelevant NYPD Custom and Usage Allegations ........................................................8

            B.    Plaintiff does not plausibly plead an unconstitutional custom or practice of NYPD officers unconstitutionally using excessive force in the form of police batons. ...............10

            C.    Plaintiff has not plead a plausible claim against the City stemming from the NYPD's alleged Failure to Train. ...............................11

      POINT III

            PLAINTIFF'S CLAIMS AGAINST DE BLASIO, SHEA, AND MONAHAN FAIL BECAUSE THEY ARE DUPLICATIVE AND BECAUSE PLAINTIFF FAILS TO ALLEGE PERSONAL INVOLVEMENT ...................................................16

**Page**

POINT IV

      PLAINTIFF FAILS TO PLAUSIBLY PLEAD
      CLAIMS FOR VIOLATION OF HIS
      SUBSTANTIVE DUE PROCESS AND EQUAL
      PROTECTION RIGHTS ...................................................17

      A.   Equal Protection Claims ...............................................17

      B.   Substantive Due Process ...............................................19

POINT V

      PLAINTIFF'S CLAIMS FOR FALSE ARREST,
      MALICIOUS PROSECUTION, AND FIRST
      AMENDMENT RETALIATION FAIL
      BECAUSE PROBABLE CAUSE EXISTED FOR
      HIS ARREST ...................................................................20

      A.   Alternatively, Plaintiff Fails to Plead a
      Federal Malicious Prosecution Claim .............................23

POINT VI

      DEFENDANTS ARE ENTITLED TO
      QUALIFIED IMMUNITY ...................................................24

POINT VII

      PLAINTIFF FAILS TO ALLEGE SUFFICIENT
      FACTS TO PLEAD A DENIAL OF A RIGHT TO
      FAIR TRIAL CLAIM .......................................................26

POINT VIII

      PLAINTIFF HAS NOT PLAUSIBLY PLED A
      CLAIM FOR NEGLIGENT HIRING OR
      SUPERVISION ................................................................27

POINT IX

      PLAINTIFF'S CLAIM FOR EXCESSIVE
      DETENTION FAILS, BECAUSE PLAINTIFF'S
      DETENTION WAS OBJECTIVELY
      REASONABLE ................................................................28

**Page**

POINT X

      SHOULD THE COURT PERMIT ANY OF PLAINTIFF'S MONELL CLAIMS TO SURVIVE, THEY ARE PROPERLY BIFURCATED AT THIS STAGE. .......................................29

      A.    [T]he evidence offered [in support of plaintiffs' *Monell* claims] will be wholly distinct" from the evidence offered in support of Plaintiffs' other claims."............................................30

      B.    "[L]itigation of [Plaintiffs' non-*Monell* claims] may obviate the need to try [Plaintiffs' *Monell* claims]." ...........................................31

      C.    "[The non-City defendants] will be prejudiced by evidence presented against [the City of New York]." ....................................32

CONCLUSION.................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**         **Pages**

*421-A Tenants Ass'n v. 125 Court St. LLC*,
   760 Fed. Appx. 44 (2d Cir. 2019) .................................................................6

*Akins v. Glens Falls City Sch. Dist.*,
   53 N.Y.2d 325 (1981) ...............................................................................27

*Alfaro v. Wal-Mart Stores, Inc.*,
   210 F.3d 111 (2d Cir. 2000) ......................................................................27

*Amato v. City of Saratoga Springs*,
   170 F.3d 311 (2d Cir. 1999) ................................................................30, 31

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004) ......................................................................14

*An v. City of New York*,
   2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1, 2017) ...........................9

*Aquino v. City of New York*,
   No. 16-cv-1577-GHW, 2017 U.S. Dist. LEXIS 76402
   (S.D.N.Y. May 19, 2017) ..........................................................................31

*Araujo v. City of New York*,
   No. 08-CV-3715, 2010 U.S. Dist. LEXIS 26082, 2010 WL
   1049583 (E.D.N.Y. Mar. 19, 2010) .........................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................3

*Bancroft v. City of Mount Vernon*,
   672 F. Supp. 2d 391 (S.D.N.Y. 2009) .......................................................25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................3

*Boyd v. City of New York*,
   336 F.3d 72 (2d Cir. 2003) ........................................................................21

*Bradway v. Gonzales*,
   26 F.3d 313 (2d Cir. 1994) ........................................................................24

*Bright v. Nunn*,
   448 F.2d 245 (6th Cir. 1971) ......................................................................5

**Cases**                                                           **Pages**

*Brodeur v. City of New York*,
No. 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500
(S.D.N.Y. Mar. 18, 2002) ....................................................................................10

*Bryant v. City of New York*,
2003 U.S. Dist. LEXIS 21642
(S.D.N.Y. Dec. 1, 2003)......................................................................................19

*Bryant v. City of New York*,
404 F.3d 128 (2d Cir. 2005)................................................................................28

*Buchanan v. City of New York*,
No. 21-Cv-660 (SHS), 2021 U.S. Dist. LEXIS 158870
(S.D.N.Y. Aug. 23, 2021) .....................................................................................4

*Burg v. Gosselin,*
591 F.3d 95 (2d Cir. 2010)..................................................................................24

*Caravalho v. City of New York*,
13 Civ. 4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280
(S.D.N.Y. Mar. 31, 2016) .........................................................................19, 28, 29

*Carter v. Inc. Vill. of Ocean Beach,*
693 F. Supp. 2d 203 (E.D.N.Y. 2010) ..................................................................4

*Cerbelli v. City of New York*,
No. 99-CV-6846 (ARR) (RML), 2008 U.S. Dist. LEXIS
109341 (E.D.N.Y. Sept. 8, 2008),
*report accepted by*, 2008 U.S. Dist. LEXIS 77335
(E.D.N.Y. Sept. 30, 2008).....................................................................................28

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..................................................................................4

*City of Canton v. Harris*,
489 U.S. 378 (1989)............................................................................................14

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986)............................................................................................32

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288, 82 L. Ed. 2d 221, 104 S. Ct.
3065 (1984)..........................................................................................................5

*Collins v. City of New York*,
923 F. Supp. 2d 462 (E.D.N.Y. 2013) .................................................................11

**Cases**          **Pages**

*Connick v. Thompson*,
   563 U.S. 51 (2011).................................................................................12

*Delorbe-Bell v City of New York*,
   No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363,
   2016 WL 1451581 (S.D.N.Y. Apr. 12, 2016).........................................15

*Dinler v City of New York*,
   04 Civ. 7921 (RJS) (JCF), 2012 U.S. Dist. LEXIS 141851
   (S.D.N.Y. Sept 30, 2012)..........................................................22, 23, 26

*Dixon v. City of New York*,
   2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017) ....................15

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004).....................................................................27

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007).........................................................................3

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012).....................................................................21

*Farmer v. Cty. of Westchester*,
   18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597
   (S.D.N.Y. Sep. 15, 2021)..........................................................................10

*Feinberg v. Saks & Co.*,
   56 N.Y.2d 206, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982).................22

*Fisher v. New York*,
   90 Civ. 8163 (LJF), 1992 U.S. Dist. LEXIS 3436
   (S.D.N.Y. Mar. 20, 1992) ........................................................................33

*Fowlkes v. Rodriguez*,
   584 F. Supp. 2d 561 (E.D.N.Y. 2008) ...................................................3-4

*Freedom Holdings, Inc. v. Spitzer*,
   357 F.3d 205 (2d Cir. 2004).....................................................................18

*Galgano v. Cty. of Putnam*,
   No. 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682
   (S.D.N.Y. July 2, 2020) .............................................................................9

*Geller v. Cuomo*,
   476 F. Supp. 3d 1 (S.D.N.Y. 2020) .......................................................5-6

**Cases**                                                 **Pages**

*Glover v. District of Columbia*,
250 A.2d 556 (D.C. Cir. 1968) ...........................................................5

*Graham v. City of New York*,
928 F. Supp. 2d 610 (E.D.N.Y. 2013) ................................................25

*Graham v. Connor*,
490 U.S. 386 (1989)...........................................................................28

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000).............................................................18, 28

*Harris v. City of Newburgh*,
No. 16-CV-2731 (KMK), 2017 U.S. Dist. LEXIS 159561
(S.D.N.Y. Sep. 27, 2017) ..................................................................12

*Hope v. Pelzer*,
536 U.S. 730 (2002)...........................................................................25

*Hunter v. Bryant*,
502 U.S. 224 (1991)...........................................................................25

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992)..............................................................21

*Ismail v. Cohen*,
706 F. Supp. 243 (S.D.N.Y. Feb. 7, 1989) .........................................33

*JG & PG ex rel. JGIII v. Card*,
08 Civ. 5668, 2009 U.S. Dist. LEXIS 85372, 2009 WL
2986640 (S.D.N.Y. Sept. 17, 2009)...................................................20

*Johnson v. City of New York*,
No. 06 CV 09426, 2011 U.S. Dist. LEXIS 15867
(S.D.N.Y. Feb. 15, 2011)...................................................................13

*Katsaros v. Cody*,
744 F.2d 270 (2d Cir. 1984)..............................................................29

*Latino Officers Ass'n v. Safir*,
170 F.3d 167 (2d Cir. 1999)..............................................................14

*Liberian Cmty. Ass'n of Conn. v. Lamont*,
970 F.3d 174 (2d Cir. 2020)..............................................................25

vii

**Cases**                                                                    **Pages**

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015).............................................................3

*Lowth v. Town of Cheektowaga,*
    82 F.3d 563 (2d Cir. 1996)............................................................22

*Malley v. Briggs,*
    475 U.S. 335 (1986).....................................................................25

*Marom v. City of New York,*
    No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466
    (S.D.N.Y. Mar. 7, 2016) ..............................................................10

*Marte v. New York City Police Dep't,*
    No. 10 CIV. 3706 PKC, 2010 U.S. Dist. LEXIS
    109932, 2010 WL 4176696 (S.D.N.Y. Oct. 12, 2010) .........................14

*McDermott v. City of New York,*
    1995 WL 347041, [*17] (E.D.N.Y. May 30, 1995,)............................22

*Monahan, et al. v City of New York,*
    20 Civ. 2610 (PKC), Opinion and Order of
    March 30, 2022, Dkt. No. 90 ........................................................12

*Monell v. Dep't of Social Services,*
    436 U.S. 658 ...........................................8, 9, 10, 11, 30, 31, 32, 33

*Morales v. Irizarry,*
    No. 95 Civ. 5068 (AGS) (HBP), 1996 U.S. Dist. LEXIS 15613
    (S.D.N.Y. Oct. 17, 1996) .............................................................32

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015)..................................................................25

*Murphy v. Lynn,*
    118 F.3d 938 (2d Cir. 1997)..........................................................21

*In re New York City Policing During Summer 2020 Demonstrations,*
    No. 20 Civ. 8924 (CM)
    (GWG), 2021 U.S. Dist. LEXIS 128437 (S.D.N.Y. Jul. 9, 2021).........22

*Nieves v. Bartlett,*
    139 S. Ct. 1715 (2019)................................................................21

*Papasan v. Allain,*
    478 U.S. 265 (1986).....................................................................3

**Cases**                                                      **Pages**

*Phillips v. Cty. of Orange*,
   894 F. Supp. 2d 345 (S.D.N.Y. 2012).................................................................16

*Pinnacle Nursing Home v. Axelrod*,
   928 F.2d 1306 (2d Cir. 1991).......................................................................18

*Pinter v. City of New York*,
   448 F. App'x 99 (2d Cir. 2011)....................................................................32

*Plumhoff v. Rickard*,
   134 S. Ct. 2012 (2014)..............................................................................25

*Price v. City of New York*,
   2018 U.S. Dist. LEXIS 105815 (S.D.N.Y. June 25, 2018)...........................11

*Rieger v. Drabinsky* (*In re Livent Noteholders Sec. Litig.*),
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................3

*Rohman v. New York City Transit Authority*,
   215 F.3d 208 (2d Cir. 2000)........................................................................24

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006)..........................................................................9

*Simmons v. Kelly*,
   06 cv 6183 (RJS), 2009 U.S. Dist. LEXIS 29115, 2009 WL 857410
   (S.D.N.Y. Mar. 31, 2009)............................................................................29

*Singer v. Fulton County Sheriff*,
   63 F.3d 110 (2d Cir. 1995).....................................................................21, 24

*Strauss v. City of Chicago*,
   760 F.2d 765 (7th Cir. 1985) ......................................................................10

*Tabor v. City of New York*,
   No. 11-CV-0195 (FB), 2012 U.S. Dist. LEXIS 29004
   (E.D.N.Y. Feb. 23, 2012)............................................................................31

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020)........................................................................16

*Town of Southold v. Town of East Hampton*,
   477 F.3d 38 (2d Cir. 2007)..........................................................................18

*Turley v. Giuliani*,
   86 F. Supp. 2d 291 (S.D.N.Y. 2000)..........................................................4-5

**Cases**          **Pages**

*United States v. Chalk*,
441 F.2d 1277 (4th Cir. 1971)
*cert. denied* 404 U.S. 943 (1971) .................................................................5

*United States v. Lanier*,
520 U.S. 259 (1997) ......................................................................................20

*Vichare v. AMBAC, Inc.*,
106 F.3d 457 (2d Cir. 1996) .........................................................................30

*West v. City of New York*,
No. 88 Civ. 1801 (DC), 1996 U.S. Dist. LEXIS 6239
(S.D.N.Y. May 8, 1996) ................................................................................30

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) .........................................................................21

**Statutes**

42 U.S.C. § 1983 .......................................................................10, 21, 31, 33

Fed. R. Civ. P. 8(a)(2) ....................................................................................3

Fed. R. Civ. P. 12(b) .......................................................................................3

Fed. R. Civ. P. 12(b)(6) ........................................................................1, 6, 11

Fed. R. Civ. P. 42(b) .....................................................................................29

N.Y.C. Admin. Code § 3-104 et seq. ..............................................................7

N.Y. C.P.L. § 140.20(1) ................................................................................29

N.Y. C.P.L. § 150.20 ....................................................................................18

N.Y. Executive Law § 24(1) ...........................................................................7

N.Y. Pen. L. § 240.20(6) ..............................................................................22

**Other Authorities**

N.Y.S. Const., Art. 1, § 8 ................................................................................4

N.Y.S. Const., Art. 1, § 11 ......................................................................17, 18

Karen M. Blum, *Making our the Monell Claim Under § 1983*, 25 Touro L. Rev. 3
(Dec. 2012) ...................................................................................................30

**<u>Other Authorities</u>**                                                                      **<u>Pages</u>**

N.Y.S. Const., Civil Rights Law § 79-P ..............................................................................1

U.S. Const., Art. III, § 2..................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff alleges that at 9:00 pm on June 3, 2020 he was arrested while participating in a protest in support of the Black Lives Matter movement, and that, during the course of his arrest, he was struck multiple times by police officers using batons. Plaintiff's complaint alleges several causes of action[1] that are not properly pled, that are not legally cognizable, or otherwise cannot survive the instant motion to dismiss. As a result, defendants the City of New York, Mayor Bill de Blasio, Commissioner Dermot Shea, Chief of Department Terrance Monahan, and Police Officer Ryan Costello (collectively, "Defendants") submit this memorandum of law in support of their partial motion to dismiss Plaintiff's First Amended Complaint, ("Complaint") (Dkt. No. 32); specifically, Defendants now move to dismiss Plaintiff's First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth (save Plaintiff's claim for Conversion) causes of action[2] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Alternatively, should any of Plaintiff's claims against the City of New York survive this motion, Defendants respectfully request that the Court bifurcate discovery into claims against the City of New York, until there has been a finding that Plaintiff suffered an underlying constitutional violation.

---

[1] Defendants do not move herein to dismiss plaintiff's claims for excessive force pursuant to federal law, and assault, battery, and conversion pursuant to New York State law.

[2] Plaintiff's claims for: municipal liability, false arrest, violation of First Amendment rights, violation of substantive due process, denial of the right to a fair trial, malicious prosecution, and New York State law based claims for violations of the New York State Constitution, Civil Rights Law Section 79-P, false imprisonment, negligent training and supervision, excessive detention, and malicious prosecution.

## STATEMENT OF FACTS[3]

Following the murder of George Floyd by Minneapolis police officers, protests erupted across the United States, including in New York City beginning on May 25, 2020. (*See*, *e.g.*, Complaint, Dkt. No. 32, at ¶ 1). After days of protests, in which violence, looting, and property destruction occurred overnight, Mayor de Blasio enacted a city-wide curfew, which, was operative on June 3, 2020, prohibited persons from being outside in New York City between the hours of 8:00 pm and 5:00 am until June 8, 2020. (*Id.*, at ¶¶ 67; *see also*, Mayoral Emergency Executive Order No. 119, dated June 2, 2020 ("Exec. Order 119"). Violation of Exec. Order 119 was punishable as a class B misdemeanor. (Complaint, at ¶ 64; Exec. Order 119).

Plaintiff alleges that on June 3, 2020 at approximately 9:00 pm, he was participating in a Black Lives Matter protest in the vicinity of 3rd Avenue and 50th Street in New York, NY. (*See* Complaint, at ¶ 85). Plaintiff alleges that unidentified members of the New York City Police Department "rushed towards protesters," in an apparent attempt to "kettle" them, and that Plaintiff attempted to record their actions. (*Id.*, at ¶¶ 90-93). However, shortly after Plaintiff began recording he was struck in the hand with a police baton by an unidentified NYPD officer who continued to strike Plaintiff after knocking his phone to the ground. (*Id.*, at ¶¶ 98-99). Plaintiff alleges that he was repeatedly struck by this officer, and that two other officers joined in beating Plaintiff before he was ultimately placed under arrest. (*Id.*, at ¶¶ 101-103 & 111).

Plaintiff was then transported by defendant Police Officer Ryan Costello ("PO Costello"), a different officer than the officer who apprehended him, for arrest processing to Brooklyn Central Booking. (*Id.*, ¶ 129). Plaintiff does not allege that PO Costello assaulted him in any way. (*See*

---

[3] All of the facts set forth herein are drawn from the Complaint, and are adopted only for the purposes of this motion to dismiss.

*generally*, *Id.*) Plaintiff was ultimately released with a summons at approximately 5:00 am the following morning, June 4th. (*Id.*, at ¶¶ 157 & 160). All of Plaintiff's charges were eventually dismissed. (*Id.*, at ¶ 164).

## <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557; *see also*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible") (quotation omitted).

In deciding a motion to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the court is required to accept the factual allegations in the complaint as true and to construe all reasonable inferences in plaintiff's favor. *See*, *e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). However, although the court must accept plaintiff's factual allegations as true, it does not need to accept legal conclusions or other conclusory statements. *E.g.*, *Rieger v. Drabinsky* (*In re Livent Noteholders Sec. Litig.*), 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, in deciding a motion to dismiss, the court is "permitted to consider and take judicial notice of certain documents, such as matters of public record, and reject the truthfulness of those allegations that are contradicted by the documents." *Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574

(E.D.N.Y. 2008). In so doing, the Court can consider "[(i.)]documents attached to the complaint as an exhibit or incorporated in it by reference... [(ii.)] matters of which judicial notice may be taken, or… [(iii.)]documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted).

## ARGUMENT

### POINT I

### ANY CHALLENGE TO THE CURFEW EMERGENCY EXECUTIVE ORDER FAILS AS A MATTER OF LAW

Plaintiff's Complaint alleges that Exec. Order 119 violated Plaintiff's right to assemble and to free speech, as protected by the First Amendment, Fourth Amendment, and Fourteenth Amendment, as well as the New York State Constitution (Complaint, ¶¶ 295-299 & 343-344). As set forth below, because Plaintiff's claims are ambiguous, not properly pled, and are founded upon pure speculation, this challenge necessarily fails.

As an initial matter, "free speech claims under Article 1, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment." *Carter v. Inc. Vill. of Ocean Beach,* 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010) (quoting *Buchanan v. City of New York*, No. 21-Cv-660 (SHS), 2021 U.S. Dist. LEXIS 158870, at *31 (S.D.N.Y. Aug. 23, 2021) (internal quotations omitted)).

Ordinarily, "[g]overnment regulations limiting the time, place or manner of expression will be upheld 'provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information.'" *Turley v. Giuliani*, 86 F. Supp.

2d 291, 295 (S.D.N.Y. 2000) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S.

288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984) (citations omitted).

However, in circumstances where temporary emergency measures are adopted to address

civil unrest, judicial review is circumscribed; while courts "would ordinarily consider the

availability of other governmental responses which could end disorder yet place fewer restrictions

on travel, free speech, and assembly, [it is not so when addressing a] "civil disorder once it has

reached the emergency stage." *See*, *e.g.*, *Glover v. District of Columbia*, 250 A.2d 556, 560 (D.C.

Cir. 1968). Rather in such circumstances, a court must determine whether the State's "actions were

taken in good faith and whether there is some factual basis for [the] decision that the restrictions

[] imposed were necessary to maintain order." *United States v. Chalk*, 441 F.2d 1277, 1281 (4th

Cir. 1971) *cert. denied* 404 U.S. 943 (1971); *see also*, *Bright v. Nunn*, 448 F.2d 245, 249 (6th Cir.

1971) (affirming a decision that officials who enacted a curfew acted properly and in good faith

and that they were fully justified in doing so).

Notwithstanding the limited scope of judicial review of emergency executive orders in the

context of stemming civil unrest, Plaintiff nonetheless alleges that the Executive Order

unconstitutionally targeted those engaged in First Amendment expression and was applied in such

a flawed manner as to violate the First, Fourth, and Fourteenth Amendments. (Complaint, at ¶¶

296-297).

However, Plaintiff offers absolutely <u>no</u> support for this speculative conclusion. Indeed, as

this Court held in a highly analogous case challenging certain Covid-19 emergency orders limiting

gatherings, "[plaintiff's] argument that the Executive Order should be read as a content-based

regulation because of the City's 'practice and policy' selectively suspending the First Amendment

for some protests while 'encouraging' [others], is unpersuasive." *Geller v. Cuomo*, 476 F. Supp.

3d 1, 13 (S.D.N.Y. 2020). The Court went on to dismiss the challenge in response to a motion to dismiss, and, in the process, noted that the city-wide nightly curfew at issue in the instant matter went into effect in order to curb, *inter alia*, property destruction and violence. *Id.*, at 24.

Plaintiff's challenge to Exec. Order 119 should fail for precisely the same reason: the City was in the midst of a crisis and the Mayor took the appropriately supported action of instating a curfew, which was not intended to target First Amendment activity. (Exec. Order 119). Plaintiff's conspicuous silence in his complaint regarding the reasons for the curfew's implementation does not negate the fact that New York City was in the midst of a crisis on June 3, 2020. *See, e.g.*, Jim Mustian, *Chaos and Destruction as New York City Protest Turns Violent*, ASSOCIATED PRESS (May 30, 2020), available at https://apnews.com/article/a786e36787da75082b3f9893b2129a0e (last accessed Jan. 19, 2022); *N.Y.C. Protests Turn Violent*, NY TIMES (May 31, 2020), available at https://www.nytimes.com/2020/05/31/nyregion/nyc-protests-george-floyd.html#link-4200ecb4 (last accessed Jan. 19, 2022); Brian Mahoney, *N.Y.C. Left Reeling After Days of Unrest, Violence Amid George Floyd Protests*, Associated Press (May 31, 2020), available at https://globalnews.ca/news/7008592/george-floyd-protests-new-york/ (last accessed Jan. 19, 2022). Indeed, on May 31, 2020, Governor Andrew Cuomo placed National Guard troops "on standby," and business leaders urged their deployment. *E.g.*, Aaron Feis, *Gov. Cuomo says National Guard 'on standby' as George Floyd protests rage on*, NY POST (March 31, 2020), available at https://nypost.com/2020/05/31/george-floyd-protests-gov-cuomo-says-national-guard-is-on-standby/ (last accessed Jan. 19, 2022).[4]

---

[4] It is proper for this Court to take notice of the media coverage. *See 421-A Tenants Ass'n v. 125 Court St. LLC*, 760 Fed. Appx. 44, 49 (2d Cir. 2019) (noting that "it is appropriate to take news articles into account even on a Rule 12(b)(6) motion"); *see, e.g.*, Compl. ¶ 42, n.2 (referencing media coverage and commentary).

Thus, the City's enactment of the curfew, and application of it to demonstrations that were ongoing afterhours was not unconstitutional, but a valid exercise of emergency executive authority to curb civil unrest. *See*, *e.g.*, N.Y. Executive Law ("Exec. Law") § 24(1) (authorizing the New York City mayor to declare an emergency and adopt emergency measures, including the "establishment of a curfew"); N.Y.C. Administrative Code ("Admin. Code") § 3-104 et seq. (authorizing the same).

As a result, the implementation of a curfew was lawful, and its implementation at protests was not viewpoint discrimination. There are simply no facts tending to support Plaintiff's allegation that the curfew was enforced against Plaintiff due to the viewpoints of his protest; there is no allegation, for instance, that there were other protests that were ongoing during the curfew where the protestors were not arrested. In short, Plaintiff speculates on the basis of decades of selectively chosen City history that had such a protest occurred that would have been the outcome. This is patently insufficient to plead a *plausible* claim for liability. This Court should not credit Plaintiff's conclusory and speculative claim that the curfew was "specifically targeted at those engaged in First Amendment expression." All of Plaintiff's claims against the City of New York – and Mayor de Blasio to the extent this was a claim brought against him – challenging the lawfulness of this Order should therefore be dismissed.[5]

---

[5] To the extent the Court does not dismiss Plaintiff's claims against the City and Mayor de Blasio stemming from the adoption and implementation of Exec. Order 119, Defendants respectfully request that the Court Order Plaintiff to state more definitively the actual claims being pled, as opposed to the illustrative lists of claims provided in the Complaint. (*See* Complaint, at ¶¶ 296-299).

## POINT II

### PLAINTIFF'S REMAINING MONELL CLAIMS ALSO FAIL

Plaintiff's other claims against the City of New York, a/k/a "*Monell*" claims,[6] fall into two broad categories. Plaintiff claims that: (A) the New York City Police Department ("NYPD") had several unconstitutional customs; and (B) that the NYPD failed to train its officers on the proper application of various principles, which led to Plaintiff's rights being violated. However, Plaintiff cites to purported practices and failures to train that have absolutely no relationship to his alleged constitutional violations, and therefore cannot support liability against the City of New York. Further, the alleged practices and failures to train that relate to plaintiff's arguably viable claims are not plausibly pled, and thus Plaintiff's claims against the City fail as a matter of law.

### A.    Irrelevant NYPD Custom and Usage Allegations

Plaintiff claims that the NYPD had an unlawful custom and usage of: (1) using "FlexCuffs" in a manner that causes injury; (2) unlawfully holding protesters in a manner likely to transmit Covid-19; (3) retaliating against protesters by using the above customs and practices; (4) retaliating against protesters by failing to issue prompt summonses; (5) retaliating against protesters by effecting mass arrests without individualized probable cause; and (6) retaliating against protesters by housing protest arrestees in unconstitutionally poor conditions. However, the constitutional violations that Plaintiff allegedly suffered himself (*i.e.*, conversion, excessive force in the form of baton strikes, false arrest, and malicious prosecution) do not relate to any of the alleged customs and usages that plaintiff is now challenging. As such, these purported *Monell* claims should be dismissed as a result.

---

[6] Monell v. Dep't of Social Services, 436 U.S. 658, 694-95(1978)

A claim for municipal liability cannot stand where there is no causal connection between the Plaintiff's alleged constitutional violation and the alleged unlawful custom. *See*, *e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Galgano v. Cty. of Putnam*, No. 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even where a Plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not violated as a result of the application of that custom or practice the claim fails. *See* U.S. Const. Art. III, Section 2; *An v. City of New York*, 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (standing, including injury in fact, required to bring *Monell* claim).

Plaintiff alleges that he was arrested while riding his bicycle across the intersection of 3rd Avenue and 50th Street; that he was beaten with a baton by multiple officers; that he was then placed in metal handcuffs that caused injuries to his wrist; that he was taken into custody and taken to a mass arrest processing center where he was issued a summons and released after approximately nine (9) hours. (Complaint, at ¶¶ 90-99, 101-103 & 111, 129, 157 & 160). Simply put, Plaintiff does not allege that he suffered any injury due to the use of FlexCuffs, never contracted Covid and does not specifically allege he was subjected to any particularly unsanitary condition of confinement, and was never subjected to a mass arrest (although his arrest was processed at a mass arrest processing center). Finally, Plaintiff actually received a summons, so he cannot claim that one was withheld because he was a protester.

As a result, Plaintiff cannot state a claim for municipal liability pursuant to any of the alleged theories of liability.

**B.**     **Plaintiff does not plausibly plead an unconstitutional custom or practice of NYPD officers unconstitutionally using excessive force in the form of police batons**

In order to plead a plausible claim for municipal liability for use of a form of excessive force, a plaintiff must "allege that the practice, custom, or usage was so widespread and so persistent that it has the force of law." *Farmer v. Cty. of Westchester*, 18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597, at *31 (S.D.N.Y. Sep. 15, 2021); *see also*, *Brodeur v. City of New York*, No. 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (dismissing claim when complaint "flatly assert[ed] a policy but contain[ed] no factual allegations sufficient to establish a municipal policy or custom").

Here, Plaintiff alleges that the City has an unconstitutional custom or usage of misusing batons in the course of arrests of protesters with a citation to a single unrelated lawsuit that resulted in a settlement in 2008, more than a decade before the allegations at issue in this matter,[7] (*see* Complaint, at ¶ 187(e) (allegations included misuse of "nightstick" a/k/a baton), and with vague and conclusory allegations that batons were misused in response to protests and that "dozens of othere cases" allege similar conduct; however, Plaintiff does not specify what is specifically alleged in those cases and/or whether those incidents pre-date this incident. (Complaint, at ¶ 232-236).

As an initial matter, the fact of another civil lawsuit, or even settlement, cannot be used to support a *Monell* claim. *See Strauss v. City of Chicago*, 760 F.2d 765, 768-769 (7th Cir. 1985)

---

[7] Allegations from unrelated lawsuits that are not articulated in this matter's complaint (*e.g.* where Plaintiff claims to incorporate all allegations by reference only to a lawsuit's docket number, without setting out what the relevant allegations are in the complaint) are not proper and should not be considered. *Marom v. City of New York*, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *77 (S.D.N.Y. Mar. 7, 2016) (in dismissing plaintiff's *Monell* claim the Court noted that Plaintiff's "allegations concerning previous section 1983 lawsuits fail to explain which—if any—lawsuits led to findings of liability against the NYPD for constitutional violations" and held that they could not support his *Monell* claim as a result).

(holding that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed without more, indicates nothing…"); *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that the "litany of other police-misconduct cases" discussed in the plaintiff's complaint involved settlements without admissions of liability and unproven allegations and "were insufficient to make a plausible case for Monell liability"). Second, other than plaintiff's own allegations, the complaint provides no other information as to the alleged other protests where plaintiff claims batons were misused by the NYPD. In fact, plaintiff fails to even note how many persons were subject to misuse of batons in incidents before his arrest on June 3rd, nor does Plaintiff allege any other facts tending to show that such baton use was unconstitutional. This is wholly insufficient to support a municipal liability claim. *See*, *e.g.*, *Price v. City of New York*, 2018 U.S. Dist. LEXIS 105815, at *47 (S.D.N.Y. June 25, 2018) (dismissing pursuant to Rule 12(b)(6) a municipal liability claim because "Plaintiff's allegations of three similar constitutional violations do not allow the Court plausibly to infer the existence of a widespread custom or practice that can be attributed to the City.").

Because Plaintiff has only cited to conclusory allegations of baton uses that he claims were unconstiutitonal without sufficient detail to allow for that conclusion to be plausible, there is simply not sufficient factual support for Plaintiff's municipal liability claim for a widespread custom or usage of using excessive force in the use of batons against protesters, and this claim is properly dismissed.

**C.** **Plaintiff has not plead a plausible claim against the City stemming from the NYPD's alleged Failure to Train.**

Plaintiff, similarly, states several purported theories of liability stemming from the NYPD's alleged failure to provide adequate training; specifically, plaintiff claims that the NYPD failed to

11

provide constitutionally sufficient training regarding: (1) the contents and manner of dispersal orders, including the requirement to provide an alternative avenue for protesting; (2) individualized probable cause determinations; (3) the use of proportional force in connection with policing First Amendment protests; (4) escorting rather than policing First Amendment protests; (5) Covid-19 safety, including the need to wear masks; and (6) that the NYPD's Strategic Response Group ("SRG") was not properly trained specifically. (*See* Complaint, ¶¶ 198-198(f)).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks omitted); *Harris v. City of Newburgh*, No. 16-CV-2731 (KMK), 2017 U.S. Dist. LEXIS 159561, at *15 (S.D.N.Y. Sep. 27, 2017) (citing *Connick* for same).

As an initial matter, to the extent that Plaintiff bases this claim on the notion that disorder control unit trainings were unconstitutional, or that the NYPD unconstitutionally failed to train in the lead-up to the Occupy Wall Street protest movement, this Court recently rejected this claim and granted the City of New York summary judgment on this exact question. *See Monahan, et al. v City of New York*,  20 Civ. 2610 (PKC), Opinion and Order of March 30, 2022, Dkt. No. 90 (granting summary judgment on the sole claim for municipal liability for the failure to properly train on policing sidewalk protests during Occupy Wall Street).

Furthermore, Plaintiff does not plead a specific training deficiency, which is independently sufficient to warrant dismissal of this claim. *See*, *e.g.*, *Johnson v. City of New York*, No. 06 CV 09426, 2011 U.S. Dist. LEXIS 15867, at *4 (S.D.N.Y. Feb. 15, 2011) (holding that a complaint that "contain[ed] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York*, No. 08-CV-3715, 2010 U.S. Dist. LEXIS 26082, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").

Further, as set forth above in Section II(B), Plaintiff has not shown any nexus between the alleged constitutional violation he suffered and these theories of liability. Plaintiff was protesting at 9:00 pm in the vicinity of 3rd Avenue and 50th Street, in violation of a lawful curfew order, Exec. Order 119, which prohibited non-essential gatherings after 8:00 pm. (Complaint, ¶ 85; *see also*, Exec. Order 119). As a result, Plaintiff was not entitled to engage in this protest, was not entitled to an alternative avenue to protest, and was not entitled to a police escort rather than arrest if he failed to disperse. Further, Plaintiff does not allege that SRG had any role whatsoever in his arrest. Plaintiff alleges that he was riding his bike when he was suddenly and repeatedly struck with a baton before being placed under arrest. (Complaint, ¶¶ 94-112). As a result, Plaintiff's claims for failure to train regarding properly policing First Amendment demonstrations, mass arrests in the context of First Amendment demonstrations, and failure to train SRG simply cannot be brought in this matter.

Finally, Plaintiff does not allege that he contracted Covid-19 as a result of his June 3, 2020 arrest, so even if failing to wear a mask could, *arguendo*, amount to an unlawful condition of confinement, and even if the NYPD failed to properly train on Covid-19 safety/mask wearing, this failure to train similarly did not lead to any harm; thus, this allegation cannot be used to support a municipal liability claim in this matter. *See*, U.S. Const. Art. III; *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999) (theoretical or conjectural harm is insufficient to support standing to bring a lawsuit).

Plaintiff also alleges that the NYPD failed to train on the use of proportional force, without any specificity to the type of force, in connection with the arrest of protesters. (Complaint, at ¶ 198(c)). Given that the only force encountered by Plaintiff was baton use and tight handcuffing, and because Plaintiff does not cite to specific examples putting the municipality on notice of a failure to train, this claim fails. Indeed, Plaintiff does not even plead facts that would allow the plausible conclusion that his experience was anything other than lawful policies and training that were misapplied by a bad actor. *See*, *e.g.*, *Marte v. New York City Police Dep't*, No. 10 CIV. 3706 PKC, 2010 U.S. Dist. LEXIS 109932, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) ("the plaintiffs have not pled facts suggesting that the constitutional deprivations they suffered were the consequence of training or supervisory deficiencies.").

Indeed, Plaintiff seeks to support a failure to train claim as a failure to train on force generally. This is improper. In order to state a failure to train claim against a municipality, a plaintiff ultimately must identify "a **specific** deficiency in the city's training program and establish that that deficiency is '**closely related** to the ultimate injury,' such that it 'actually caused' the constitutional deprivation.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (emphasis added) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). Plaintiff

here does not cite to a specific training deficiency, but alleges, in effect, that the entirety of the NYPD's training on the use of reasonable force is deficient. *But see*, *Dixon v. City of New York*, 2017 U.S. Dist. LEXIS 119042, at *34 (S.D.N.Y. July 27, 2017) ("Judge Schofield concluded that the OIG Report undermined — rather than bolstered — plaintiff's failure to train claim, because it 'describes NYPD training courses titled Use of Force and Policing Professionally and notes that the number of hours the NYPD spends on 'use-of-force scenario-based training' is 'roughly on par' with the national average.") (analyzing and applying Judge Schofield's decision in *Delorbe-Bell v City of New York*, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581, at *3-4 (S.D.N.Y. Apr. 12, 2016)).

As a result, Plaintiff's claim for failure to train is based on allegations that have no nexus to his alleged constitutional violations. Further, the one claim that does relate to his own experience and alleged constitutional violation, *i.e.* plaintiff was allegedly subjected to excessive force with a baton, is improperly pled in an overly broad manner without citing to a "specific deficiency" related to baton use.[8] Thus, Plaintiff's claims against the City of New York should be dismissed, and the City dismissed as a party.

---

[8] Plaintiff's claim for municipal liability due to a custom or failure to train that led to his excessively tight handcuffing fails for the same reasons.

**POINT III**

**PLAINTIFF'S CLAIMS AGAINST DE BLASIO, SHEA, AND MONAHAN FAIL BECAUSE THEY ARE DUPLICATIVE AND BECAUSE PLAINTIFF FAILS TO ALLEGE PERSONAL INVOLVEMENT**

Plaintiff names as defendants former Mayor Bill de Blasio, former Police Commissioner Dermot Shea, and former Chief of Department Terrance Monahan. However, Plaintiff does not allege any personal involvement of these individuals, and thus his claims fail.

As an initial matter, any claim against the Mayor, Commissioner, and Chief in their official capacities is duplicative of plaintiffs' claims against the City of New York. When "a plaintiff names both the municipal entity and an official in [their] official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (citing cases). Thus, the Court should dismiss the claims against defendants in their official capacities. This is precisely what Plaintiff claims here. There is no allegation that Mayor de Blasio, Commissioner Shea, or Chief Monahan were personally involved beyond Plaintiff's speculative claim that each of them "designed and/or implemented policies and practices" that are alleged to have been unconstitutional. (Complaint, at ¶ 304). In essence, Plaintiff is claiming that their official actions in forming policies for the City led to his harms; this is not direct personal liability, it is rather a lawsuit against these defendants in their official capacities. As a result, because Plaintiff cannot support a claim against the City, Plaintiff's claims against these defendants also fail.

Any claims against de Blasio, Shea, and Monahan in their personal capacity also fail. "Simply put, there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Because plaintiff fails to "directly plead and prove" that Mayor de Blasio, Commissioner Shea, and Chief Monahan

"through the [their] own individual actions, ha[ve] violated the Constitution, this claim cannot proceed. *Id.* at 612. There is no allegation that any of these defendants participated in the arrest and use of force on plaintiff, or directly violated Plaintiff's rights in any way, and as a result the claims against these defendants should be dismissed.

**POINT IV**

**PLAINTIFF FAILS TO PLAUSIBLY PLEAD CLAIMS FOR VIOLATION OF HIS SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION RIGHTS**

Because Plaintiff's claims for violation of his equal protection rights and violation of his substantive due process rights are not plausibly pled, and are founded upon flawed legal theories, they are properly dismissed.

**A.    Equal Protection Claims**

Plaintiff brings claims for a violation of his substantive due process rights, (*see* Complaint, at ¶ 303), and for violations of his equal protection rights under federal and New York State law. (*Id.*, at ¶¶ 309-311 (federal) & ¶¶ 343-344 (violation of New York State Constitution, Art. 1, Section 11's Equal Protection guarantee). Plaintiff alleges, specifically, that he was denied equal protection of the law because he was not issued a summons on the street, but was rather forced to go to an NYPD facility to receive a summons, and alleges that this was because he was a protester. (*Id.*, at ¶¶ 311-313). Because Plaintiff had no constitutionally cognizable interest in an immediate summons and because there is simply no evidence that Plaintiff was treated disparately from a similarly situated person who was not protesting, Plaintiff's claims for violation of his Equal Protection rights under federal and state law fail.

"To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) that the person, compared with others similarly

17

situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). The New York State Constitution, Article 1, section 11, Equal Protection claim is coextensive with that under the United States Constitution. *See Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991); *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007)).

In the instant case, Plaintiff claims that he was arrested for offenses that implicate N.Y. C.P.L. 150.20, which Plaintiff maintains "required that Plaintiff receive a summons on the street in lieu of a fuller or lengthier detention; and/or…under NYPD policies and procedures that are applied in non-protest contexts, arrestees are taken directly to a nearby local precinct [and released in two to four hours]." (Complaint, at ¶ 310). Plaintiff further alleges that, because he was a protester, he was nonetheless arrested and not released for nearly nine hours with a summons from Brooklyn Central Booking rather than a local precinct. (*Id.*, ¶¶ 311-313).

Plaintiff's allegations are based on pure speculation alone and nothing more. Plaintiff does not cite to a single instance of someone being arrested for violation of Exec. Order 119 who was not a protester who was treated differently, *i.e.* released with an immediate summons. Further, even if Plaintiff's entirely speculative and conclusory allegations were credited, the Second Circuit has rejected the notion that merely being treated differently necessarily implies a denial of equal protection, as the comparator must be "similarly situated" in "all material respects." *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (interpreting "similarly situated" as meaning in "all material respects"). The mere fact that Plaintiff was arrested at a protest, at a time when many others were being arrested in Manhattan, is sufficient reason for the denial of an

immediate summons – even assuming one was required – without supporting a claim for denial of equal protection. *Caravalho v. City of New York*, 13 Civ. 4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280, at *62 (S.D.N.Y. Mar. 31, 2016) (in granting defendants' summary judgment the Court noted that "[t]he fact that defendants treated individuals arrested on his or her own differently than individuals arrested in large groups is not evidence of selective treatment because such individuals are not similarly situated."). Stated differently, because Plaintiff has not identified a "similarly situated" comparator, his claim is entirely speculative and should be dismissed.

Nor does plaintiff have a constitutional right to receive a summons in lieu of an arrest. *Bryant v. City of New York*, 2003 U.S. Dist. LEXIS 21642, at *29 (S.D.N.Y. Dec. 1, 2003) ("New York state law does not create a protected right in the issuance of a desk appearance ticket.").

As a result, Plaintiff's claims for denial equal protection, pursuant to federal and state law, should be dismissed.

## B.    <u>Substantive Due Process</u>

Plaintiff alleges that PO Costello and John Does 1– 4 violated his Substantive Due Process rights because they "enforced offenses in a manner that rendered them constitutionally void for vagueness and/or overbroad, such that their enforcement against Plaintiff violated their [sic] Due Process rights, in that Defendants' enforcement…reflected the absence of adequately clear standards to guide police officials extremely broad discretion to arrest anyone at their whim…without fair warning." (Complaint, at ¶ 303). Plaintiff does not articulate what offense was rendered unconstitutionally vague by its enforcement, does not articulate what warning or notice was required of the law before its enforcement would be cured of this defect, or even whether this is related to the alleged need for dispersal orders before arrest. Distilled, Plaintiff appears to simply be attempting to re-state his claim for false arrest alongside a challenge to Exec. Order 119 of vagueness, and as a result this claim should be dismissed.

"To state a substantive due process claim, a plaintiff must allege that (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." *JG & PG ex rel. JGIII v. Card*, 08 Civ. 5668, 2009 U.S. Dist. LEXIS 85372, 2009 WL 2986640, at *5 (S.D.N.Y. Sept. 17, 2009). However, "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

To the extent that Plaintiff's claim is premised on the idea that police have the power to arrest "at their whim," this is a legally incorrect statement that entirely dispenses with the probable cause standard of the Fourth Amendment. To the extent that Plaintiff seeks to challenge Exec. Order 119 as overbroad, the Order is very simple: no one was allowed to be out in New York City from 8:00 pm to 5:00 am, unless an essential worker or person experiencing homelessness. (*See* Exec. Order 119). Plaintiff does not identify any component of this Order that is vague or overbroad, nor how as enforced it was "rendered…constitutionally void."

Plaintiff is simply attempting to replead his false arrest claim as a violation of Substantive Due Process, and this claim should be dismissed as a result.

## POINT V

### PLAINTIFF'S CLAIMS FOR FALSE ARREST, MALICIOUS PROSECUTION, AND FIRST AMENDMENT RETALIATION FAIL BECAUSE PROBABLE CAUSE EXISTED FOR HIS ARREST

Because probable cause existed to both arrest and prosecute Plaintiff, his claims under state and federal law for false arrest, malicious prosecution, and First Amendment retaliation all should be dismissed for failure to state a claim upon which relief can be granted.

The elements of a false arrest claim under Section 1983 "are substantially the same as the elements of a false arrest claim under New York law." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.* (internal quotations and citations omitted). However, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Further, probable cause is also a defense to a claim of First Amendment retaliation. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (The existence of probable cause "will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.").

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

In the context of a malicious prosecution claim, probable cause to prosecute is a complete defense to a claim of malicious prosecution. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (to establish a claim of malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3)

lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."). However, "[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *E.g.*, *McDermott v. City of New York*, 1995 WL 347041, [*17] *5 (E.D.N.Y. May 30, 1995,); *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982); *see also*, *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571-72 (2d Cir. 1996).

As set forth above, Exec. Order 119 established an emergency curfew in the City of New York prohibiting all persons that were not exempt, *e.g.* essential workers, from being out in New York City from 8:00 pm to 5:00 am on June 3, 2020. (*See*, *supra*, Point I). "Failure to comply with this Order shall result in orders to disperse, <u>and</u> any person who knowingly violates the provisions of this order shall be guilty of a class B misdemeanor." Exec. Order 119 (emphasis added).

However, as this Court made clear in analyzing these very executive actions, "[t]he conduct prohibited by [Exec. Order 118] was being out in public between certain hours – not failing to obey a dispersal order." *In re New York City Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437, at *68 (S.D.N.Y. Jul. 9, 2021). Indeed, this is highly analogous to the New York State disorderly conduct statute, which states that a person is guilty of disorderly conduct if gathered in a public space recklessly creating the risk of public annoyance or alarm and refuses lawful orders to disperse. N.Y. Pen. L. § 240.20(6). However, even in the disorderly conduct context, dispersal orders are not a mandatory prerequisite to probable cause for arrest. As this Court held in *Dinler v. City of New York*, "the Court declines to find that a dispersal order is an absolute prerequisite under the Fourth Amendment to finding that all arrestees in a mass arrest were violating the law, it nevertheless recognizes that police

efforts to sort lawbreakers from bystanders, and to advise the latter that they should leave, are highly probative of whether it would be reasonable to conclude that every person arrested violated the law." *Dinler v City of New York,* 04 Civ. 7921 (RJS) (JCF), 2012 U.S. Dist. LEXIS 141851, at *22 (S.D.N.Y. Sept 30, 2012). Thus while dispersal orders may be significant in determining whether a violation was "knowing" the order itself is not required where other circumstantial evidence tends to so demonstrate.

Plaintiff admits that he was out participating in a protest at 9:00 pm on June 3, 2020, in clear violation of Exec. Order 119. (Complaint, at ¶ 2). Plaintiff concedes that the officer who apprehended him observed Plaintiff riding a bicycle in this protest in violation of this curfew.

Thus, the question is would a person of reasonable caution, viewing Plaintiff riding his bicycle amongst protesters in violation of the curfew, believe that Plaintiff has knowingly violated Exec. Order 119 even in the absence of a dispersal order. The answer is plainly yes, and as a result probable cause existed for Plaintiff's arrest. Further, after being placed under arrest, Plaintiff did not allege that he was an essential worker, that he was a person experiencing homelessness, or was any other category of person exempt from Exec. Order 119. As a result, no intervening event or information severed probable cause and probable cause to prosecute also existed due to Plaintiff's violation of Exec. Order 119.

As a result, because probable cause existed to arrest and prosecute Plaintiff, his claims for false arrest, malicious prosecution, and First Amendment retaliation fail.

A.     **Alternatively, Plaintiff Fails to Plead a Federal Malicious Prosecution Claim**

Even if probable cause did not exist, which it did as set forth above, Plaintiff's federal malicious prosecution claim still fails because Plaintiff never experienced a post-arraignment deprivation of liberty.

In addition to these state law elements for malicious prosecution, a malicious prosecution claim under federal law requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000). *Singer*, 63 F.3d, at 117 ("a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty.").

Plaintiff was released following arrest with a summons and his charges were dismissed before he ever made a court appearance. (Complaint, at ¶¶ 164). As the Second Circuit held in *Burg v. Gosselin*, "a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure [for the purposes of a malicious prosecution claim]." 591 F.3d 95, 98, 101 (2d Cir. 2010). Thus Plaintiff's federal malicious prosecution claim fails.

## POINT VI

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Because reasonable officers could disagree as to whether an arrest of a person out at 9:00pm on June 3, 2020 was in violation of Exec. Order 119 even in the absence of orders to disperse, Defendants are entitled to qualified immunity and Plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation are properly dismissed.

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known… or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). Qualified

immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and internal quotation marks omitted).

"The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law." *Graham v. City of New York*, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013); *see also*, *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("as is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution.")

"Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (quotations omitted). Plaintiffs must show with a high degree of specificity that the rule they seek to apply prohibited the official's conduct. *Id.* at *186-7 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)). The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curium) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). Similarly, the Supreme Court has "repeatedly told courts... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (omission in original) (citation and internal quotation marks omitted)

Plaintiff was arrested for violation of Exec. Order 119. Although Plaintiff concedes that he was in fact violating that Executive Order because he was out at 9:00pm on June 3, 2020 without a lawful purpose, Plaintiff appears to allege that probable cause was somehow lacking because no orders to disperse were allegedly given. However, no Court had ever analyzed such an emergency curfew order in the Second Circuit, and this Court has held in analogous situations that dispersal orders are not a mandatory prerequisite to arrest. *E.g.*, *Dinler v City of New York,* 04 Civ. 7921 (RJS) (JCF), 2012 U.S. Dist. LEXIS 141851, at *22 (S.D.N.Y. Sept 30, 2012).

As a result, it was reasonable for officers observing Plaintiff bicycle around a protest that was occurring in violation of Exec. Order 119 to conclude that probable cause existed for his arrest even without orders to disperse. Thus, Plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation all fail, because these officers are entitled to qualified immunity.

## POINT VII

### PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS TO PLEAD A DENIAL OF A RIGHT TO FAIR TRIAL CLAIM

Plaintiff claims that he was denied his right to a fair trial because "Defendant Costello fabricated evidence of a material nature, likely to influence a jury's decision, intentionally forwarded that evidence to prosecutors, as a result of which Plaintiff suffered liberty deprivations and other injuries." (Complaint, at ¶ 322). Plaintiff, however, alleges that true information contained in the summons was also somehow fabricated, i.e. that PO Costello observed Plaintiff out at 9:00pm on June 3, 2020 in violation of Exec. Order 119. (*Id.*). Plaintiff admits that he was in the vicinity of 3rd Avenue and 50th Street at 9:15 pm on June 3, 2020, in violation of Exec. Order 119. (Complaint, at ¶ 2). Plaintiff does not allege that he knows, or even believes, that PO Costello did not so see him; rather, Plaintiff seems to conclude that because PO Costello did not participate in placing him in handcuffs, he could not have seen him. This is not a logical inference.

As a result, Plaintiff's claim for denial of a right to a fair trial fails because Plaintiff has not identified any information was fabricated, *a fortiorari*, Plaintiff has not identified material information that was forwarded to prosecutors that was fabricated.

## POINT VIII

### PLAINTIFF HAS NOT PLAUSIBLY PLED A CLAIM FOR NEGLIGENT HIRING OR SUPERVISION

Plaintiff's claim for negligent hiring and supervision is entirely speculative and not based on any factual predicate. Indeed, Plaintiff simply pleads that "upon information and belief, Defendant City negligently trained and supervised the police officials described [in the Complaint]." (Complaint, at ¶ 352).

To state a claim for ordinary negligence under New York law, a plaintiff must plausibly allege three elements: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). To state a claim for negligent hiring and retention under New York law, a plaintiff must plausibly allege, in addition to the elements of standard negligence, that: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).

Plaintiff pleads no facts tending to show that the City was on notice that any of the individual defendants, named or unknown, had a propensity to engage in excessive force, failing to intervene, or any of the other claims alleged by Plaintiff.

Additionally, in order "[t]o maintain a claim against a municipal employer for 'negligent hiring, training, and supervision' of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of employment when committing the tort." *Cerbelli v. City of New York*, No. 99-CV-6846 (ARR) (RML), 2008 U.S. Dist. LEXIS 109341, at *85 (E.D.N.Y. Sept. 8, 2008), *report accepted by*, 2008 U.S. Dist. LEXIS 77335, at *2-4 (E.D.N.Y. Sept. 30, 2008) (citations omitted). Here, plaintiff specifically alleges that all defendants were acting within the scope of their employment. (Complaint, at ¶ 21). This is legally inconsistent with Plaintiff's claim against defendant City for negligent hiring, retention, supervision, and training, and is another sufficient reason to dismiss this claim. As a result, this claim is properly dismissed.

### POINT IX

### PLAINTIFF'S CLAIM FOR EXCESSIVE DETENTION FAILS, BECAUSE PLAINTIFF'S DETENTION WAS OBJECTIVELY REASONABLE

Plaintiff argues that he should have been issued a summons and released immediately and that because he was not, he was unreasonably or excessively detained. A plaintiff's claim for unreasonable detention under the Fourth Amendment is judged by the same objective reasonableness test for excessive force set forth in *Graham v. Connor*, 490 U.S. 386 (1989). *See, e.g.*, *Bryant v. City of New York*, 404 F.3d 128 (2d Cir. 2005) (applying the *Graham* test to determine the reasonableness of pretrial detentions following warrantless arrests). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

This Court previously rejected the same argument in *Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280, at *43 (S.D.N.Y. Mar. 31, 2016)

(granting summary judgment for defendants and noting that "[t]he fact that plaintiffs were not given summonses does not, itself, create a genuine issue of material fact regarding the reasonableness of plaintiffs' detention. If plaintiffs could sustain their excessive detention claims simply by showing that defendants could have, but did not, release them with a summons, than every summons-eligible arrest for which a summons was not given would amount to an unreasonable detention. There is no law supporting that assertion."). The *Caravalho* logic applies equally well here, where Plaintiff was simply given a summons and released.

Plaintiff alleges that he was not given a summons; however, this alone is not sufficient to state a claim for excessive detention. Plaintiff was released after only nine hours in custody, and there are simply no facts upon with to conclude this claim is plausible. *Simmons v. Kelly*, 06 cv 6183 (RJS), 2009 U.S. Dist. LEXIS 29115, 2009 WL 857410, at *5 (S.D.N.Y. Mar. 31, 2009) ("New York courts have interpreted [N.Y. C.P.L. § 140.20(1)] to mean that any delay over twenty-four hours is presumptively unnecessary.").

As a result, Plaintiff has not plead a plausible claim for excessive pre-arraignment detention, and this claim is also properly dismissed.

### POINT X

### SHOULD THE COURT PERMIT ANY OF PLAINTIFF'S MONELL CLAIMS TO SURVIVE, THEY ARE PROPERLY BIFURCATED AT THIS STAGE

District courts have broad discretion under Rule 42(b) of the Federal Rules of Civil Procedure to bifurcate issues and/or claims. Fed. R. Civ. P. 42(b); *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (the decision to bifurcate is "firmly within the discretion of the trial court.").

Bifurcation is "appropriate where the evidence offered on two different issues will be wholly distinct[,]…where litigation of one issue may obviate the need to try another issue[,]" *see*

*Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466 (2d Cir. 1996), or "where one party will be prejudiced by evidence presented against another." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). To prevail on a bifurcation motion, the moving party need only demonstrate the presence of one of these factors. *Amato*, 972 F. Supp., at 124, aff'd, 170 F.3d 311 (2d Cir. 1999)); *see also*, *West v. City of New York*, No. 88 Civ. 1801 (DC), 1996 U.S. Dist. LEXIS 6239, at *15-*16 (S.D.N.Y. May 8, 1996).

Although only one of these factors is needed to warrant bifurcation, all three factors favor bifurcation in the instant case.

**A.**     **[T]he evidence offered [in support of plaintiffs' *Monell* claims] will be wholly distinct" from the evidence offered in support of Plaintiffs' other claims."**

In order to succeed on his municipal liability claims, Plaintiff will have to show that there was a policy, custom or usage, or failure to train on the part of the City of New York related to *each* of these theories of liability. In short, Plaintiff's municipal liability claim focuses not on the actual treatment of Plaintiff, but on the policies of the City of New York, and the relationship between the City of New York and the NYPD in the days, months, and years leading up to June 3, 2020.

The types of evidence required to succeed on these  claims will necessarily consist of other instances and allegations of misconduct, as well as the structure of formal review systems in place to train and monitor police conduct. In short, the evidence will focus on the mechanisms for placing the City of New York and its policy makers on notice of misconduct and alleged misconduct of non-party City employees, and any remedial measures put in place to prevent such misconduct or alleged misconduct by the City of New York and its policy-makers. *See*, *e.g.*, Karen M. Blum, *Making our the Monell Claim Under Section 1983*, 25 Touro L. Rev. 3, at 841 (Dec. 2012) (describing the types of evidence needed to make out a custom or practice *Monell* claim). Indeed,

as has been noted by many Courts, "Section 1983 actions are particularly well suited for bifurcation because the evidence needed to show a 'policy and custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official." *Amato*, 170 F.3d at 320.

In stark contrast to Plaintiff's *Monell* claims, the types of evidence that will be required to succeed on Plaintiff's claims against the individually named defendants will be limited to the treatment of Plaintiffs by these defendants on the day of the incident only. Evidence of policy-makers' notice, customs, practices, policies, and other instances of misconduct by non-party actors are wholly irrelevant to whether plaintiffs were, *inter alia*, falsely arrested and subjected to excessive force.

Because of the distinct nature of the evidence that will necessarily be offered in support of plaintiffs' municipal liability claim as compared to his other claims, their municipal liability claims should be bifurcated.

**B.      "[L]itigation of [Plaintiffs' non-*Monell* claims] may obviate the need to try [Plaintiffs' *Monell* claims]."**

Bifurcation is commonplace in 42 U.S.C. § 1983 cases involving claims against both individual and municipal defendants because the resolution of a single issue—the plaintiffs' underlying constitutional claim—may resolve the case in its entirety. *E.g.*, *Tabor v. City of New York,* No. 11-CV-0195 (FB), 2012 U.S. Dist. LEXIS 29004, at *32 (E.D.N.Y. Feb. 23, 2012)); *Aquino v. City of New York*, No. 16-cv-1577-GHW, 2017 U.S. Dist. LEXIS 76402, at *8 (S.D.N.Y. May 19, 2017). As one court noted while addressing bifurcation:

> The overwhelming weight of authority [from the District Courts in this Circuit] holds that since the City's liability is derivative of individual defendants' liability and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established.

31

*Morales v. Irizarry*, No. 95 Civ. 5068 (AGS) (HBP), 1996 U.S. Dist. LEXIS 15613, at *3-*4, & *6 (S.D.N.Y. Oct. 17, 1996) (collecting cases). In the instant case, should Plaintiff fail to establish that he was subjected to a constitutional violation, his claim for municipal liability necessarily fails. *See Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) ("'[I]f [the police officer] inflicted no constitutional injury on respondent, it is inconceivable that [the city] could be liable to respondent.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (alterations in original)).

Additionally, in this matter, Defendants have already moved to dismiss Plaintiffs' *Monell* claims in their entirety, and bifurcation of these claims will provide the Court with the time needed to decide Defendants' motion without forcing the parties to engage in costly and time-consuming *Monell* discovery that may ultimately be unnecessary.

As a result, because the resolution of the underlying claims may obviate Plaintiffs' *Monell* claim, that claim should be bifurcated.

**C.    "[The non-City defendants] will be prejudiced by evidence presented against [the City of New York]."**

Individual defendants in cases involving *Monell* claims face a substantial risk of unfair prejudice because the extensive discovery required to prepare a *Monell* claim for trial delays the resolution of the other claims in this matter, as well as because a jury must sift through and apply entirely distinct sets of material fact for a plaintiff's underlying and municipal claims. In the instant case, the individually named defendants will face substantial prejudice in discovery and at trial should Plaintiffs' municipal liability claim not be bifurcated.

As an initial matter, Plaintiffs' municipal liability claims will require time-consuming and costly discovery into City practices and decision-makers notice of prior unrelated instances of misconduct. Further, *Monell*-related discovery into unrelated incidents and allegations will delay

and dramatically expand the discovery required in this matter. All of this discovery will delay the expeditious resolution of the claims against the individually named defendants, and delay adjudication of their defenses. Further, "[t]here is a danger that evidence admissible on the issues relating to conduct by the City or the individual officers will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant." *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. Feb. 7, 1989) (internal quotation marks omitted); *see also*, *Fisher v. New York*, 90 Civ. 8163 (LJF), 1992 U.S. Dist. LEXIS 3436, at *5 (S.D.N.Y. Mar. 20, 1992) (finding the "possibility of prejudice and jury confusion [to be] substantial here" in a 42 U.S.C. § 1983 police case involving individual and municipal defendants).

In short, Plaintiff's municipal liability claim, should it not be bifurcated, will allow a jury to hear irrelevant, confusing, and prejudicial evidence of misconduct by non-parties that is unrelated to the actions of the individually named defendants. Jurors hearing evidence of other instances of misconduct, which are necessary to Plaintiffs' *Monell* claims, may struggle to effectively apply the limiting instructions of the Court that they may consider only the evidence admissible for each claim in their deliberations on that point. That jury may seek to punish the defendants before them – the individually named defendants in these matters – for past misconduct on the part of non-party City employees or for harms that are not traceable to their conduct. This process may result in unnecessary expenditure of judicial resources during discovery and unjust outcomes at trial, which is also sufficient reason to bifurcate plaintiffs' municipal liability claim.

In conclusion, Plaintiff's *Monell* claim is properly bifurcated because the types of discovery needed for each claim are wholly distinct from plaintiffs' other claims, because the municipal liability claim may be precluded should Plaintiffs not succeed on their other claims against the individual defendants, and because failing to bifurcate the claim will likely result in

prejudice to the individually named defendants. As a result, Defendants now respectfully request that the Court bifurcate Plaintiffs' claims against the City of New York.

## **CONCLUSION**

In light of the foregoing, Defendants respectfully request that this Court dismiss Plaintiff's First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth (save Plaintiff's claim for Conversion) causes of action. Alternatively, should the Court permit any of Plaintiff's claims against the City to move forward in discovery, Defendants respectfully request that the Court bifurcate Plaintiff's Monell claims until such time as there has been a finding of an underlying constitutional violation.

Dated:        New York, New York
              June 13, 2022

                                        HON. SYLVIA O. HINDS-RADIX
                                        Corporation Counsel of the City of
                                           New York
                                        *Attorney for City, de Blasio, Shea,*
                                        *   Monahan, & Costello*
                                        100 Church Street, 4th Floor
                                        New York, New York 10007
                                        T: (212) 356-2424

                              By:       /s/ *Andrea Osgood*
                                        _____
                                        Andrea Osgood, Esq.
                                        *Assistant Corporation Counsel*

cc:      All Counsel of Record (via ECF)