Case 1:21-cv-10839-PKC Document 31 Filed 06/28/22 Page 1 of 3



| | | |
|---|---|---|
| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, N.Y. 10007 | **ANDREA OSGOOD**<br>*Assistant Corporation Counsel*<br>phone: (212) 356-2424<br>fax: (212) 356-3509<br>aosgood@law.nyc.gov |

June 28, 2022

**BY ECF**
Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  <u>Rebecca Margolies v. City of New York, et al.</u>, 21 Civ. 10839 (PKC)

Your Honor:

      I am an Assistant Corporation Counsel in the Office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel for the City of New York representing defendants City of New York ("City"), Bill de Blasio, Dermot Shea, and Terence Monahan in the above-referenced matter. I submit this letter on behalf of the parties, and in accordance with the Court's January 7, 2022 and June 24, 2022 Orders (ECF Nos. 7 and 30), in advance of the Initial Conference currently scheduled for July 1, 2022 at 10:00 a.m.

1. A brief description of the case, including the factual and legal bases for the claims and defenses;

    A. *Plaintiff's Statement:*

When she was arrested, Plaintiff was working as what is called "jail support" for protesters. That practice is common and well-known to New York Police Department officers: it is often how, when people are released in the middle of the night, they manage to get home safely. That was particularly true when the NYPD was releasing protesters who had been arrested for curfew violations in the middle of the night *while the curfew was still in force*. Members of the NYPD are very familiar with jail support in particular because jail support volunteers set up tents outside of mass arrest processing locations during virtually every mass arrest in the City — and have done so for decades.

After the particularly brutal crackdown on a protest in the Mott Haven neighborhood in the Bronx, NYPD sent hundreds of arrestees — many bleeding from baton strikes to the head or other brutality — to three different boroughs. Plaintiff, along with other volunteers including a medic literally wearing her hospital scrubs, arrived at the 40th Precinct stationhouse. Plaintiff and the other volunteers had on hand an attestation that explained that Mayor de Blasio had specifically clarified that protest support — jail support, legal observers, and so on — were "essential workers" and not subject to the curfew.

Despite that, Defendants refused to review the attestation, did not give **any** order to disperse — meaning they violated "the City's official policy … say[ing] that dispersal orders should be given" and chose to "ignore what the curfew order said," *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437, at *46-47 (S.D.N.Y. July 9, 2021) — and instead immediately just arrested Plaintiff.

Plaintiff therefore makes claims for false arrest, First Amendment retaliation, and other related claims — all growing out of the probable cause-free arrest. She also brings related *Monell* claims because (among other things) the arrest reflects NYPD's choice to, notwithstanding the Mayor's guidance, arrest essential workers providing services to protesters in particular.

B. *Principal Defenses:*

Defendants' principal defenses are that: (1) there was probable cause for plaintiff's detention, arrest, and subsequent prosecution; (2) to the extent that any force was used during the course of plaintiff's arrest, it was reasonable and justified under the circumstances; (3) the complaint fails to state a claim upon which relief can be granted; (4) the named defendants had no personal involvement in the alleged incident; and (5) plaintiff has failed to state a claim for municipal liability pursuant to Monell v. Dep't of Social Services, 436 U.S. 1978.[1] Defendants' anticipated defenses are more fully laid out in their May 5, 2022 pre-motion conference letter. (ECF No. 19). Defendants also maintain the right to set forth additional defenses in their anticipated motion to dismiss.

2. Any contemplated motions;

Defendants do not consent to coordinate *Monell* discovery with the consolidated docket in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM)(GWG). Further, in accordance with the Court's June 13, 2022 Order (ECF No. 28), defendants will be filing a motion to dismiss the *Monell* claim, at a minimum, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Notably, this Court has previously dismissed similar *Monell* claims as set forth in the complaint herein. *See, e.g., Monahan, et al. v City of New York*, 20 Civ. 2610 (PKC), Opinion and Order of March 30,

---

[1] Should plaintiff amend the complaint to name individual police officers, defendant City submits that the defense of qualified immunity will be applicable.

2022, Dkt. No. 90. Alternatively, defendant City will be moving to bifurcate any *Monell* discovery herein. Defendants also anticipate filing a motion for summary judgment, pursuant to Rule 56 of the FRCP after the close of discovery, if necessary.

Plaintiff intends to move to coordinate *Monell* discovery with the consolidated docket in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM) (GWG) — since the *Monell* claims here are identical, and the Court there has already found they survive a motion to dismiss. Your Honor has already granted such a motion in *Rodriguez, et al., v. The City of New York, et al.*, 21 CV 10815 (PKC), and every other Judge in this district to consider such a motion has granted it, and has rejected the City's nonsensical argument for bifurcation. Indeed, as the Court put it, the City's argument on this point, "contrary to its intended purpose..., highlights the wisdom of coordination" (Order, ECF No. 17, *Rodriguez*, 21-cv-10815 (PKC)). The City has offered no new arguments — its only explanation for its position is "We are not consenting to coordination because we intend to move to dismiss the Monell claim, or in the alternative, to bifurcate the claims." Plaintiff also intends to seek costs because of the City's insistence of serial litigation of this issue and its continued inability to articulate a coherent reason to oppose coordination.

3. The prospect for settlement;

   *Plaintiff's Position*
   Plaintiff made an initial demand on May 20, 2022. Defendants have not yet made a counteroffer, and the parties have thus not been able to begin settlement discussions.

   Plaintiff's counsel note that the City's positions on the Summer 2020 cases in federal court have not been such that they are optimistic about the prospects for settlement here — though the City's State Court settlement unit appears to value these cases meaningfully differently.

   *Defendants' Position*
   While the parties appear to have differing views about the value of this action, to the extent that the Court is inclined to so refer this matter, defendants are willing to attend an early mediation in an effort to resolve this matter prior to the parties expending significant time and resources.

   Thank you for your consideration herein.

Respectfully submitted,

/s/ *Andrea Osgood*
Andrea Osgood
Assistant Corporation Counsel

cc: **VIA ECF**
All counsel of record