**Gideon Orion Oliver**
—ATTORNEY AT LAW—
He/him/his

277 Broadway, Suite 1501
New York, NY 10007

1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230

Gideon@GideonLaw.com*
GideonLaw.com

**Office**: (718) 783-3682
**Signal**: (646) 263-3495
**Fax**: (646) 349-2914*

*Not for service*

March 29, 2022

**BY ECF**
Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *DeLuca, et al. v. City of New York, et al.*, 21 cv 10777 (AJN)(KHP)

Your Honor:

    I am co-counsel for Plaintiffs in this matter. I hereby submit this joint letter on behalf of all parties in accordance with this Court's January 17, 2022 Order (Dkt. 13) and March 26 Order (Dkt. 24) in order to explain counsels' disagreements and disputes related to the dates and other terms in the proposed Case Management Plan that the parties have submitted today (Dkt. 25, the "CMP") in advance of the initial pretrial conference in this matter scheduled to take place at 11:30a.m. on March 30, 2022. Plaintiffs respectfully note that most of the requests for relief and arguments defense counsel has advanced in its papers come as a surprise to Plaintiffs' counsel, as they were not discussed in the context of the parties' Rule 26(f) conference.

    **Plaintiffs' position:** Preliminarily, Plaintiffs renew their request to remove this case from the so-called 1983 Plan codified in SDNY Local Civil Rule 83.10 (*see* Dkt. 17, a copy of which is attached as Exhibit 1 and incorporated herein). For the Court's information, just last week, in response to similar applications made by Plaintiffs' counsel in other lawsuits arising from events same Mott Haven NYPD operation, Hon. Lewis J. Liman and Hon. P. Kevin Castel removed actions pleading almost identical claims to those at issue in this lawsuit from the 1983 Plan. *See Sukana, et al. v. NYPD, et al.,* 21-cv-10899 (LJL) (Dkt. 14); *Rodriguez, et al. v. City of New York, et al.,* 21-cv-10815 (PKC) (Dkt. 14, a copy of which is attached as Exhibit 2).

    Beyond that, with respect to the CMP and Defendants' requests that the Court stay and/or bifurcate *Monell* discovery, as Plaintiffs have mentioned in their request to remove the case from the 1983 Plan, this matter is one of many that have been filed in this Court arising from a large New York City Police Department ("NYPD") mass arrest operation in the Mott Haven neighborhood in the Bronx in which Plaintiffs and over 250 others were kettled without prior dispersal orders or opportunities to disperse, assaulted, arrested, detained for excessive periods of time in unsafe conditions, and falsely and maliciously prosecuted and the manner in which the NYPD and Defendant City of New York policed other summer 2020 Black Lives Matter protests. Discovery has been ongoing in a set of flagship cases, including an action brought by the New York State

1

Attorney General on behalf of the People of the State of New York, and several putative class actions, focusing on the Mott Haven protest, raising *Monell* claims identical to those Plaintiffs here herein, which have been consolidated for pre-trial purposes under the *In re New York City Policing During Summer 2020 Demonstrations* docket at 20-cv-8924 (CM)(GWG) before Hon. Colleen McMahon and Hon. Gabriel W. Gorenstein (the "Consolidated Actions").

  The Consolidated Actions have been on a rocket docket since early 2021. On July 9, 2021, Judge McMahon ruled on Defendants' partial motion to dismiss related to various *Monell* claims that are identical to those pleaded in this case. *See* 548 F.Supp.3d 383 (SDNY 2021). Discovery, including dozens of depositions of NYPD "line officers" as well as depositions of higher-ranking NYPD members and 30(b)(6) witnesses related to the overlapping fact and *Monell* claims in those cases has been proceeding apace, with dozens of lawyers participating. Recently, the Court stayed certain higher-level depositions, and extended the discovery and other deadlines in the Consolidated Actions, in light of a March 4, 2022 decision from the Second Circuit reversing in part a prior decision by Judge McMahon to deny certain parties, including the Police Benevolent Association, intervention as of right. *See Payne v City of NY (In re NY City Policing During Summer 2020 Demonstrations)*, 2022 U.S. App. LEXIS 5778 (2d Cir Mar. 4, 2022, No. 21-1316). The current fact discovery cutoff, by which all discovery, including *Monell* discovery, is to be completed, is July 21, 2022. Although that date may well be adjusted depending on, among other things, the length of the current stay, the Court and the parties expect fact discovery to be complete in the Consolidated Actions within the next few months, and by the end of this year at the latest.

  Against that backdrop, Plaintiffs ask that the Court allow the parties to benefit from the ongoing discovery in the Consolidated Actions – including the discovery related to the Mott Haven incident and the *Monell* claims in play in those cases, which are identical to those pleaded in this case – by directing that discovery in this action proceed in coordination with discovery in the Consolidated Actions. As mentioned in Dkt. 17, that is what Judge McMahon and Hon. Lewis A. Kaplan did in *Casablanca-Torres v. City of New York, et al.,* 21-cv-10832 (LAK)(JLC) *Britvec, et al. v. City of New York, et al.,* 21-cv-10759 (LAK)(KNF), *see Britvec* Dkt. 18, a copy of which is attached as Exhibit 3. Additionally, Judge Castel issued a similar Order in *Rodriguez, see* Exhibit 2. With respect to the *Rodriguez* Order, in this matter, Plaintiffs would not ask that Defendants re-produce the document discovery that have been produced or the deposition transcripts that have been created in the Consolidated Actions in this matter. Rather, we would ask that, after the Court enters an appropriate protective order in this matter, the parties enter into a stipulation, for the Court to so order, or the Court enter an order, allowing the parties to make full use of the discovery that has been, and will be, conducted in the Consolidated Actions in this matter. *See, e.g., Hernandez, et al. v. City of New York, et al.,* 21 Civ. 7406 (CM)(GWG), December 15, 2021 Order (Dkt. 333 in the Consolidated Actions, a copy of which is attached as Exhibit 4). Such a stipulation and/or order would allow the parties to coordinate discovery in this matter with the discovery, including the ongoing discovery, in the Consolidated Actions.

  Further, as discussed below, Defendants' proposals to either stay or bifurcate *Monell* discovery would not, as they claim, serve judicial economy, or the other interests courts typically consider in exercising discretion as to staying or bifurcating discovery.

  In opposition to coordinating discovery in this matter with discovery in the Consolidated Actions, Defendants first incorrectly tell the Court that Plaintiffs seek to have the discovery in the Consolidated Actions re-produced in this matter. As explained above, that is not the case. If

2

discovery is coordinated as Plaintiffs are proposing, rather than re-producing the vast majority, if not all, of the documentary evidence relevant to Plaintiffs' *Monell* claims, the parties could rely on the discovery in the Consolidated Actions with respect to those claims. Requiring the parties to coordinate discovery, including line officer and high-level depositions, that is ongoing in the Consolidated Actions where there is overlap would increase economy and efficiency. And, with respect to discovery that relates specifically to Plaintiffs' experiences, to the extent such discovery has already been exchanged in the Consolidated Actions, the parties could simply identify any such discovery in their discovery responses in this case utilizing the date(s) of production and Bates Numbers in the Consolidated Action, rather than re-producing it in this action.

Also in opposition to coordinating discovery, Defendants repeatedly – and wrongly - claim that Plaintiffs' counsel have access to the discovery in the Consolidated Actions as if we can just use it in this matter, but the lone attorney assigned to this case from defense counsel's office does not have access to or knowledge of that discovery. On the first claim, there is a robust protective order in the Consolidated Actions that prohibits Plaintiffs' counsel from using the many documents and deposition transcripts Defendants have designated as "Confidential" in the Consolidated Actions for any other purpose, including in this matter, so it simply is not true that Plaintiffs' counsel have "access" to that discovery to use in this matter. (To the extent Defendants' counsel claims *not* to have access to that discovery, it appears Plaintiffs' counsel would need to either identify or re-produce it to Defendants' counsel in order to make use of it here.) That discovery includes not only documents pertaining to the events at Mott Haven and the related arrests, arrest processing, and prosecutions, but also dozens of depositions of NYPD members and third-party fact and *Monell* witnesses. If there is no coordination of discovery between this action and the Consolidated Actions, many witnesses, including many of the named Defendants in this action, would be exposed to duplicative discovery in this matter, rather than being on the hook to testify about both the Consolidated Actions, and, to the extent necessary, this action, on one date or set of dates, by all interested parties, as has been the practice in the Consolidated Actions.

Relatedly, although defense counsel in this matter claims not to have access to the discovery produced in the Consolidated Actions, Defendants and defense counsel – the Law Department – absolutely do. To the extent the sole Assistant Corporation Counsel assigned to this case does not, that is a problem Defendants have created by not providing such access, and/or that defense counsel has created through the manner in which the Law Department has staffed, and the choices it has made in litigating, this case and the Consolidated Actions. This Court should not allow Defendants to make staffing and resource allocation decisions that essentially keep defense counsel's head in the sand, creating burdens other staffing and resource allocation decisions would not, and prejudice Plaintiffs' pursuit of their claims in this case – especially not after Defendants removed this case from the forum in which it was brought and opposed marking the case as potentially related to the Consolidated Actions or any other pending matters. *See, e.g.,* Dkt. 17 in this matter; *Britvec* Dkt. 16.

Unfortunately, many of Defendants' arguments in support of their positions opposing coordinated disocovery are thinly (if at all) veiled, and improper, accusations that Plaintiffs' counsel have done something wrong by filing this case, and several others, on behalf of a small number of individual Plaintiffs, while also representing the Plaintiffs in one of the large, putative class actions that challenges NYPD misconduct last summer and specifically at the Mott Haven protest, *Sow, et al. v. City of New York, et al.,* 21-cv-0053 (CM)(GWG). Those accusations are baseless. As Plaintiffs explained in Dkt. 17 in this matter, Plaintiffs in this case determined to opt out of any putative class

3

that might eventually be certified before this Court and instead file their claims in New York State Supreme Court, Bronx County. Defendants then decided to remove the case to this Court and not to mark it as potentially related to the Consolidated Actions, although the potential relationship was clear, and Plaintiffs would have marked this case as potentially related to the Consolidated Actions, had we filed it in this Court in the first instance. Plaintiffs respectfully note that Defendants made similar – and similarly baseless - accusations of improperly bringing "opt-out" cases while simultaneously representing putative class members against Plaintiffs' counsel in their submissions to the Court in the *Casablanca-Torres* and *Britvec* matters, in which Defendants were asking that the Court *not* treat those cases as related to the Consolidated Actions, *see, e.g., Britvec* Dkt. 17, and Judge McMahon and Judge Kaplan did not address those baseless accusations in deciding the dispute in those cases and directing that the cases proceed before Judge Kaplan without being consolidated with the Consolidated Actions, but with coordinated discovery, *see, e.g., Britvec* Dkt. 18. Finally in this connection, in a footnote, Defendants speculate that "[r]equests and rulings regarding 'coordinating' discovery in this case, and the other cases would permit plaintiffs' counsel to bill separately for reviewing the same discovery in at least 3 separate cases that the undersigned is currently aware of." Defendants' speculation amounts to accusing Plaintiffs' counsel of planning to double or triple bill for discovery review in related actions. Of course, Plaintiffs' counsel plan to do no such thing. To the contrary, Plaintiffs' proposals would reduce, if not eliminate, duplicative discovery. Defendants have no basis for lodging their own fantasy and speculation as an accusation against Plaintiffs' counsel. This type of baseless accusation from Law Department counsel has recently drawn criticism from Judge Gorenstein in the Consolidated Actions. *See* Consolidated Actions Dkt. 347 ("the City's letter improperly accuses plaintiffs' counsel of acting unprofessionally …without providing any basis for the accusation. Such accusations shall not be repeated in the future"). We therefore ask that the Court ask defense counsel at tomorrow's conference to explain the factual basis – if any – for the speculation in this footnote, and admonish defense counsel against making such improper and baseless accusations in the future, or otherwise admonish defense counsel as the Court otherwise deems just and proper, after hearing Defendants' response.

Next, Plaintiffs oppose Defendants' proposed application for a stay. "'[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.'" *Louis Vuitton Malletier S.A. v LY USA, Inc.*, 676 F3d 83, 97 (2d Cir 2012) (internal citation omitted). That said, a stay is "an extraordinary remedy," *id.* at 98 (internal quotation and citation omitted), and "[t]he person seeking a stay 'bears the burden of establishing its need.'" *Id.* at 97 (internal citation omitted). "'[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.*, quoting *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (EDNY 2003). "The district court's decision ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.'" *Id.* at 99 (internal citation omitted). "The district courts of this Circuit, for example, have often utilized a six-factor balancing test first set forth by then-district court judge Chin" that considers:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

4

*Id.* at 99, citing *Trustees of the Plumbers & Pipefitters Natl. Pension Fund v Transworld Mech.*, 886 F. Supp. 1134, 1139 (SDNY 1995).

Taking those factors, and the interests of justice, into consideration, Defendants have not shown their entitlement to a stay. The first two factors are not applicable, as there are no criminal proceedings against any of the Defendants.

As to the third factor, Plaintiffs have "a legitimate interest in the expeditious resolution of [their] civil case." *Jackson v. Johnson*, 985 F.Supp. 422, 425 (SDNY 1997). In this matter, Plaintiffs have been actively attempting to pursue justice and accountability since June of 2020, and initiated this action in early September of last year. Although Defendants claim that a stay of the *Monell* discovery would not prejudice Plaintiffs, they are wrong. For example, if there is a stay, and discovery in this matter is not coordinated with the discovery in the Consolidated Actions, almost all of the named Defendants in this matter will be deposed in the Consolidated Actions, and Plaintiffs' counsel in this matter will not have time allotted in, and will not be allowed to ask relevant questions of the witnesses deposed in, the relevant depositions in the Consolidated Actions. Similarly, if there is a stay, and without coordination, Plaintiffs' counsel will not be able to pursue *Monell* discovery – such as, critically, high-level witness, including 30(b)(6) witness, testimony - related to Plaintiffs' experiences and claims in this case, in the Consolidated Actions. Allowing the matters to proceed in parallel, and coordination, will best serve Plaintiffs' private interests in proceeding expeditiously, and minimize the burden to Plaintiffs, Defendants, and the Court. And, contrary to Defendants' unsupported assertion, staying or bifurcating *Monell* discovery would have the effect of preventing Plaintiffs from exploring their core constitutional and *Monell* claims, because, as a practical matter, defense counsel in the Consolidated Actions will not allow Plaintiffs' counsel in this action to explore discovery about Plaintiffs' claims in this case in the Consolidated Actions, unless there is an order from this Court directing the parties to coordinate discovery.

As to the fourth factor, the private interests of and burden on the Defendants, Defendants do not have an interest, aside from the usual interests civil Defendants have, that would be implicated by moving forward with discovery in this case – certainly not one Defendants have identified. And, although defense counsel points to "circumstances of this case to date" as examples of burdens that Defendants' *counsel* claims will be imposed upon the attorney assigned to this case unless the Court grants a stay, as argued above, those burdens, to the extent they are (or might become) real, are the result of staffing and resource allocation decisions Defendants have made, as a result of which counsel in this case apparently does not have knowledge of, or access to, the discovery exchanged to date, and scheduled to be exchanged in the future, in the Consolidated Actions. Additionally, Defendants' claims about burden in this connection appear to assume that defense counsel would need to *re-produce* the discovery from the Consolidated Actions in this matter, which, as Plaintiffs have clarified above, is not what Plaintiffs have proposed.

As to the fifth factor, the interests of the courts, "a court's interests is usually best served by discouraging motions to stay," *Hicks*, 268 F.Sup.2d at 243 (citation omitted), and "judicial economy would not be achieved by a stay of this action," *Jackson*, 985 F.Supp. at 425, including because imposing a stay "would disrupt the court's calendar by … postponing" significant discovery, as well as trial, *IBM Corp. v. Brown*, 857 F.Supp. 1384, 1392 (C.D.Cal. 1994). While Defendants claim that "[a] stay would also prevent the likelihood of inconsistent decisions on the identical *Monell* claims, which could potentially be separately litigated in at least 4 separate cases being handled by the plaintiffs' counsel in this matter," the only way that would happen is if Defendants make motions to

5

dismiss claims in these cases, the majority of which Judge McMahon ruled were well-pleaded in the Consolidated Actions. *See In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383 (SDNY 2021)

As to the sixth and last factor, continuing, rather than staying, this litigation would serve the public interest, including the "important federal interests and broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Crosby v. City of New York*, 269 F.R.D. 267, 274 (SDNY 2010) (Scheindlin, J.).

For substantially the same reasons as Plaintiffs oppose Defendants' request for a stay, Plaintiffs also oppose Defendants' request to bifurcate *Monell* discovery. Although Defendants claimed that the evidence offered on Plaintiffs' claims will be "wholly distinct" from the evidence related to Plaintiffs' *Monell* claims, that is absolutely not true. There is and will be substantial overlap between discovery that is relevant to Plaintiffs' core constitutional claims and individual experiences and discovery that is relevant to Plaintiffs' *Monell* claims. "Bifurcation" — *Monell* or otherwise — "is the exception rather than the rule." *Crawley v City of Syracuse*, 2018 US Dist LEXIS 130266, at *9 (NDNY Aug. 3, 2018), *citing Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). Defendants present no special arguments in favor of bifurcation. Rather, they use a canned, boilerplate argument that is strictly duplicative of their arguments in support of their application for a stay. As seen above, Defendants have not established their entitlement to the extraordinary remedy of a stay. For the same reasons, they have not established entitlement to bifurcation.

If the Court grants Plaintiffs' request to allow discovery, including *Monell* discovery, in this matter to proceed in coordination with discovery in the Consolidated Actions, Plaintiffs would respectfully suggest that the parties move forward with discovery as to Plaintiffs' claims in this action in accordance with the deadlines proposed in Sections 5 and 6(b) through (d) of the CMP, with adjustments to the dates for completion of depositions and discovery designed to accommodate the need to coordinate discovery with the Consolidated Actions (which is expected to be completed this year, but may extend beyond the dates in the CMP), while, at the same time, making use of the discovery that has been, and will be, conducted, in the Consolidated Actions, including, critically, the extensive and ongoing document discovery and depositions of both line- and high-level NYPD witnesses related to the Mott Haven incident and Plaintiffs' *Monell* claims.

With respect to Defendants' arguments that Plaintiffs are proposing to take too many depositions in Section 6(a) of the CMP, Plaintiffs have provided those estimates based on years of experience litigating in cases arising from protests against Defendant City and the NYPD, as well as Plaintiffs' experiences litigating in the Consolidated Actions. There are three plaintiffs here, each of whom was brutally assaulted, arrested, and then handled through mass arrest processing by a number of NYPD members, the majority of whom have not been identified, despite Plaintiffs' best efforts to do since June of 2020. At Mott Haven itself, Plaintiff DeLuca, an essential worker providing medical care and wearing blue scrubs and "an identification badge, which prominently feature[d] the words 'Columbia University Irving Medical Center' and 'DEPT OF EMERGENCY MEDICINE'" (Compl. ¶¶ 144-147) interacted with three different, specifically identified officers (two named Does, one known) and a number of others; Plaintiff Shoop was brutally assaulted and had his camera damaged by three different officers (also two named Does, one known); and Plaintiff Farrow was brutally assaulted and had requests for medical attention ignored by approximately 11 officers (ten named Does, one known). Plaintiffs have estimated that, setting aside higher-level depositions and *Monell* discovery, it will take between 5-10 depositions per Plaintiff to identify the

Does. In short, while it is not necessary that the estimated number of depositions will actually need to take place — and Defendants has significant control of just how necessary the depositions are — given the scope of the misconduct here, between 5-10 depositions per Plaintiff may well be necessary in this case. To the extent Defendants claim that Plaintiffs are looking for "a second bite of the apple in regard to higher level officer deposition[s] that are related to *Monell* discovery," there is simply no support for that claim, as Plaintiffs are seeking an order directing the parties to coordinate all the relevant apple-biting so that it all takes place in a coordinated and efficient manner – preferably, in a single bite.

Finally, with respect to the dates proposed in Sections 8 and 9 of the CMP by which the pleadings must be amended or parties must be joined, Plaintiffs have identified a number of John or Jane Doe Defendants in the Complaint and described their relevant conduct. Given Plaintiffs' counsel's experienced in the Consolidated Actions, and other, similar cases arising from mass arrest events at protests, with trying to identify Doe Defendants, we are confident that it will take beyond than May 31, 2022 to identify the key Doe Defendants who were involved in trapping, assaulting, arresting, processing, and prosecuting Plaintiffs. In fact, efforts to identify Does in the Consolidated Actions are still ongoing more than a year into the case. This is, in part, as the City itself has explained, because there have been "unprecedented challenges in investigating these complaints particularly around the identification of officers due to the failure to follow proper protocols, officers covering their names and shield, officers wearing protective equipment that did not belong to them, the lack of proper use of body worn cameras, as well as incomplete and severely delayed paperwork." CCRB 2020 Protest Data Snapshot (March 22, 2022). In this case, as seen in Dkt. 17, Plaintiffs have been pressing Defendants to identify the Doe Defendants since Defendants removed this case in December of last year, but Defendants have not identified any of the Does. Although Defendants say they have "no intention of forcing the parties to engage in meaningless motion practice by withholding their consent" to amendment, they have not agreed to consent to amendment. (Relatedly, in conversations Dara Weiss, Esq. of the Law Department in the Consolidated Actions, defense counsel represented – correctly, Plaintiffs' counsel thinks – that defense counsel could not consent to amendment on behalf of people it does not know the identities of, let alone represent). Nor have defense counsel entered into an agreement they have entered into in three of the Consolidated Actions related to Doe Discovery, under which, "[w]ith respect to individual Doe Defendants who are later identified and represented by counsel to the City, the Law Department will not oppose the assertion by Plaintiffs that their claims against such Doe Defendant relate back to the date on which Plaintiffs' original Complaint was filed for statute of limitations purposes." *See Hernandez, et al. v. City of New York, et al.,* 21-cv-7406 (CM)(GWG), Dkt. No. 351 in the Consolidated Actions; *Gray, et al. v. City of New York, et al.,* 21-cv-6610 (CM)(GWG), Dkt. 294 in the Consolidated Actions; and *Minett v. City of New York, et al.,* 21-cv-8161 (CM)(GWG), Dkt. 353 in the Consolidated Actions. Unless Defendants can provide some reason why what has happened in the Consolidated Actions and with CCRB investigations with respect to Doe identifications will not happen in this case, too, Plaintiffs respectfully ask that the Court set a much longer date by which Plaintiffs may amend the pleadings to substitute the true names of these Defendants for their current Doe placeholders than the May 31, 2022 deadline Defendants have consented to in the proposed CMP.

**Defendants' position**: I am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York assigned to represent the Defendants in the above-referenced matter. Defendants write in accordance with Your Honor's Individual Practices and in the Court's January 17, 0222 Order requesting the parties explain any

7

disputes related to the jointly proposed Case Management Plan. The parties' primary dispute pertains to the timing and scope of Monell discovery. Plaintiffs seek to coordinate discovery in this matter with the discovery in In re NY City Policing During Summer 2020 Demonstrations, 20-cv-8924(CM) (GWG) (S.D.N.Y.) ("Summer 2020"), and to produce all documents produced to plaintiffs in Summer 2020. The City defendants respectfully request: 1) a stay of the Monell discovery in this matter, pending the resolution of Summer 2020; or in the alternative, 2) bifurcation of the Monell discovery in this matter, pending the resolution of the already pending and identical Monell claim in Summer 2020. Further, plaintiff filed a motion letter to remove this action from Local Civil Rule 83.10. formally know as the 1983 Plan. On March 17, 2022 Defendants filed their reply in opposition and continue their request to keep this case as part of the Plan.(Docket entry number 19).

Plaintiffs' counsel requests that the Court direct discovery in this action to proceed and be coordinated with discovery in the Summer 2020 Actions. The Sumer 2020 actions consist of 10 cases, one which is stayed, and 3 class actions stemming from the NYPD's response to protests in the Summer of 2020 through January of 2021. Plaintiffs' counsel in this matter, Gideon Oliver, Remy Green, Jessica Massimi and Elena Louisa Cohen, are four of the forty-seven (47) attorneys in the Summer 2020 cases, and have been litigating Summer 2020 for the past year and five months. (See Civil Docket, Summer 2020). As such, the plaintiffs' counsel in this matter already have access to the approximately 550,000 pages of discovery that have been produced thus far in Summer 2020 and they also have an intimate familiarity with the record in Summer 2020 spanning the course of one year and five months. The undersigned, who is not involved in the defense of Summer 2020 or familiar with the extensive discovery in Summer 2020, and is the only attorney representing the City defendants in this matter, would now be required to both produce and familiarize himself with an approximately 550,000 page record just relating to Monell discovery. If the this Court orders the Defendants to coordinate discovery in this matter with Summer 2020 and ordering the City defendants to produce all documents produced to plaintiffs in Summer 2020 Defendants would bear an extreme burden duplicating work already produced and accessible to plaintiffs' counsel

Furthermore, on August 26, 2021, counsel in this case filed filed a Second Amended Class Action Complaint wherein they sought to represent a class under Federal Rule of Civil Procedure 23(b)(3) consisting of the following persons: "(a) all persons arrested based upon an alleged violation of Mayor de Blasio's Emergency Executive Order No. 119 who were confined and/ or seized by police before the time of day at which the curfew went into effect, who later had summonses or charges dismissed; (b) arrested for participating in an allegedly unlawful assembly from May 28, 2020 to June 8, 2020, for which police lacked probable cause to believe that the assembly in question had the purpose of engaging or preparing to engage in tumultuous and violent conduct, who later had summonses or charges dismissed; and/ or (c) injured by the use of objectively unreasonable force by members of the New York City police department in the course of arresting and/ or dispersing protestors who had been surrounded and charged, from May 28, 2020 to June 8, 2020." (Summer 2020, Second Amended Class Action Complaint, ¶192 Civil Dkt. No. 249) The plaintiffs in this matter fall into the proposed class in Summer 2020. Not only that, but the plaintiffs in this matter are bringing an identical Monell claim to the Monell claim alleged in Summer 2020. (See Id. ¶¶218-222).

The City defendants also note that the plaintiffs' attorneys in this case have no less than 3 separate cases related to the summer 2020 protests that have not been consolidated with

8

Summer 2020.¹ To the extent other plaintiffs have brought a putative class action (20 CV 08924) alleging claims of false arrest and excessive force at the Mott Haven protests, the City defendants are unclear why the three individual plaintiffs' claims in this case as well as the claims in the other two cases are not being litigated in that class action.² Nevertheless, were the City ordered to coordinate discovery in each of these individual cases, which appears to be the direction that plaintiffs' counsel seeks to proceed in each separate case, it would cause a staggering amount of duplicative litigation and a burdensome effort on the part of the City defendants, that provides no benefit whatsoever to plaintiffs. Therefore, due to the extensive amount of discovery that has been, and will be, produced in Summer 2020, which the plaintiffs' counsel in this matter already possess and will have in their possession, the City defendants respectfully request that the Court deny plaintiffs request to coordinated discovery with the Summer 2020, matter.

Instead, the City defendants respectfully propose a stay of Monell discovery in this matter, pending the resolution of the identical Monell claim as brought in the Summer 2020 cases. Federal courts have inherent power and discretionary authority to stay a case if the interests of justice so require. See United States v. Kordel, 397 U.S. 1, 12 n.27 (1970). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012); Plaintiffs #1-21 v. County of Suffolk, 138 F. Supp. 3d 264 (E.D.N.Y. 2015). Given the circumstances of this case to date – the complexity and extensive discovery that has been produced and litigated in Summer 2020 for the past year and five months that the undersigned will now be required to produce in an extremely short period of time, plaintiffs' counsels' participation in Summer 2020, their familiarly and access to the aforementioned Monell discovery, and given the expedited docket in Summer 2020, a stay of the Monell discovery in this matter is appropriate. A stay would also prevent the likelihood of inconsistent decisions on the identical Monell claims, which could potentially be separately litigated in at least 4 separate cases being handled by the plaintiffs' counsel in this matter. Furthermore, a stay of the Monell discovery in this matter would not prejudice the plaintiffs in any manner, as there is no risk for loss of evidence or testimony as plaintiffs' counsel are already handling and intimately familiar with this discovery in Summer 2020.

Bifurcation of the Monell discovery in this matter is also warranted, pending the resolution of the identical Monell claim in Summer 2020. District courts have broad discretion under Rule 42(b) of the Federal Rules of Civil Procedure to bifurcate issues and/or claims. Fed. R. Civ. P. 42(b); Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984) (the decision to bifurcate is "firmly within the discretion of the trial court."). Bifurcation is "appropriate where the evidence offered on two different issues will be wholly distinct[,]…where litigation of one issue may obviate the need to try another issue[,]" see Vichare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir. 1996), or "where one party will be prejudiced by evidence presented against another." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999). To prevail on a bifurcation motion, the moving party need only demonstrate the presence of one of these factors. Amato, 972 F. Supp., at 124, aff'd, 170 F.3d 311 (2d Cir. 1999)); see also, West v. City of New York, No. 88 Civ. 1801 (DC), 1996 U.S. Dist. LEXIS 6239, at *15-*16 (S.D.N.Y. May 8, 1996). The evidence offered on plaintiffs' false arrest, excessive force,

---

¹ See Rodriguez, et al., v. The City of New York, et al., 21 CV 10815 (PKC); and Sukana, v. CNY, 21-cv-10899(LJL).
² Requests and rulings regarding "coordinating" discovery in this case, and the other cases would permit plaintiffs' counsel to bill separately for reviewing the same discovery in at least 3 separate cases that the undersigned is currently aware of.

9

and First Amendment claims are "wholly distinct" from the evidence offered related to plaintiffs' Monell claim. Moreover, for all of the reasons discussed above, bifurcation of plaintiffs' Monell claim would be time and cost effective and if Monell discovery is not bifurcated, the City defendants would be prejudiced for the reasons stated above.

### I.  Section 6(a), 8 and 9 of the Case Management Plan

With respect to section 6(a) of the CMP, plaintiffs are requesting leave of the Court to conduct more than thirty depositions, as well as a second bite of the apple in regard to higher level officer deposition that are related to Monell discovery. As previously stated, plaintiffs' counsel will have performed or has current access to due to counsel's involvement in the Sumer 2020 litigation to a significant amount of discovery, and counsel, who purport to represent a class of individuals who were arrested there, have not explained why they would need to take those depositions a second time. As stated above, the Monell discovery should be stayed to avoid duplicative efforts.

The claims in this case pertain to the arrest of three individuals who were arrested and for approximately six to nine hours. All claim they were subjected to excessive force, but only one of the three obtained medical treatment as a result of their purported injuries. Under Fed. R. Civ. Proc. 26(b), discovery should be proportional to the needs case. The parties should be limited to ten depositions, until and unless plaintiffs can show that additional depositions are necessary – something they have not yet done.

Finally, the dates proposed in Section 8 and 9 of the CMP by which pleadings must be amended or parties must be joined are appropriate as is. The Defendants have agreed two months from the initial conference to add Doe defendants to the pleadings without seeking defendants further consent. Moreover, pursuant to Fed. R. Civ. Proc. 15(b)(2), a party may amend its pleadings with the opposing party's written consent at any time. Defendants explained to plaintiffs that we have no intention of forcing the parties to engage in meaningless motion practice by withholding their consent, should plaintiffs seek to name additional proper parties after those two months have passed. The parties should aim to complete this step within two months in accordance with the CMP, with the joint understanding that an additional amendment may be necessary further on in discovery.

For the foregoing reasons, the City defendants respectfully propose that the Court: 1) stay the Monell discovery in this matter, pending the resolution of the Summer 2020 matter; or in the alternative, bifurcate Monell discovery in this matter, pending the resolution of the identical Monell claim in Summer 2020; 2) direct that the case remain in the Plan; 3) limited the parties to ten depositions and; 4) direct that the last date to amend pleadings and join other parties be May 31, 2022.

The parties thank Your Honor for the Court's attention to this matter.

Respectfully submitted,

/S/

Gideon Orion Oliver

*Michael Viviano* /s/

Michael C. Viviano, Esq.
Assistant Corporation Counsel

11