UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FRANCISCO JAVIER CASABLANCA TORRES,

Plaintiff,

-against-                                                   21-cv-10832 (LAK)

THE CITY OF NEW YORK, et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4-4-2023

## MEMORANDUM OPINION

Appearances:

  Gideon Orion Oliver

  Elena L. Cohen
  J. Remy Green
  Jessica Massimi
  COHEN GREEN PLLC

  *Attorneys for Plaintiff*

  Sylvia O. Hinds-Radix
  CORPORATION COUNSEL OF THE CITY OF NEW YORK
  Peter W. Brocker
  SENIOR COUNSEL
  Andrea Osgood
  ASSISTANT CORPORATION COUNSEL

  *Attorneys for Defendants*

2

LEWIS A. KAPLAN, *District Judge.*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and New York State law against four city employees and the City of New York in connection with his alleged arrest and unlawful beating by police at a protest for racial justice and police reform in the summer of 2020. The matter is before the Court on defendants' motion to dismiss portions of the amended complaint under Rule 12(b)(6) and to bifurcate all claims against the City of New York. (Dkt 42)

*Facts*

The following facts are taken from the amended complaint and assumed to be true for purposes of evaluating the motion to dismiss.[1]

*2020 Black Lives Matter Protests*

On May 25, 2020, two months into the COVID-19 pandemic, George Floyd was killed by a Minneapolis police officer.[2] In the days and weeks that followed, protests against police violence and in support of the Black Lives Matter ("BLM") movement erupted across the country, including in New York City.[3]

On May 28, 2020, the first large-scale demonstrations occurred in New York City. One group of protestors marched to City Hall where New York Police Department ("NYPD") officers

---

[1]  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

[2]  FAC ¶ 1.

[3]  FAC ¶ 1.

allegedly arrested approximately 75 people.[4]  Over the next several days, BLM protests continued

throughout the five boroughs.[5]  Each day, NYPD officers allegedly responded to these protests with

excessive force and with mass arrests of hundreds of protestors.[6]

*The Curfew Orders*

Beginning on June 1, 2020, then-Mayor Bill de Blasio issued a series of orders

establishing a city-wide curfew (the "Curfew Orders"), citing the protests in response to George

Floyd's murder as a primary justification.[7]  During the hours of the curfew, "no persons or vehicles"

could "be in public" except for certain categories of people that were deemed "essential," including

"police officers, peace officers, firefighters, first responders and emergency technicians, individuals

traveling to and from [or] performing essential work, people experiencing homelessness and without

access to a viable shelter, and individuals seeking medical treatment or medical supplies."[8]

The Curfew Orders explicitly provided that any "[f]ailure to comply" with them

---

[4] FAC ¶ 57.

[5] FAC ¶¶ 57-60.

[6] *Id.*

[7] FAC ¶¶ 61-81.

[8] FAC ¶ 63-65.

4

would "result in orders to disperse, and [that] any person who knowingly violate[d]" them would "be guilty of a class B misdemeanor" under New York City Administrative Code ("NYCAC") § 3-108.[9]

After Mayor de Blasio issued the Curfew Orders, the NYPD allegedly sent two department-wide statements concerning implementation of the orders. The first, on June 1, 2020, allegedly instructed officers that "[e]nforcement will take place only after several warnings are issued and the violator is refusing to comply."[10] The second, on June 3, 2020 – the day of plaintiff's arrest – allegedly omitted the language limiting enforcement until warnings first were given and instead stated only that, for a "person violating the curfew, a C-summons may be issued."[11]

*Enforcement of the Curfew Orders*

Despite the Curfew Orders, large-scale demonstrations continued during the curfew hours in June 2020. That month, NYPD officers allegedly arrested hundreds of people at protests for alleged violations of the Curfew Orders, allegedly without first providing a meaningful dispersal order or opportunity to disperse. Meanwhile, plaintiff claims, the police turned a blind eye to other "non-essential" people who were in public during the curfew hours, but not at protests.[12] In total, NYPD

---

[9]  FAC ¶¶ 64, 68.

Both the Curfew Orders and NYCAC § 3-108 contained a "knowing" intent requirement.

[10]  FAC ¶¶ 73-74.

[11]  FAC ¶¶ 76-77.

[12]  FAC ¶¶ 71-72.

officers are said to have arrested over 2,000 people during BLM demonstrations between May 27 and June 5, 2020, including approximately 190 protesters on the night of plaintiff's arrest.[13]

*Plaintiff's Alleged Beating and Arrest by NYPD Officers*

Plaintiff participated in a BLM protest in Manhattan on the evening of June 3, 2020, a day on which the Curfew Orders were in effect from 8 p.m. until 5 a.m. the following day[14] Shortly before 9 p.m., plaintiff claims he was riding his bicycle southbound on Third Avenue from 51st Street along with other protesters and NYPD officers.[15] Allegedly without any warning or dispersal orders, NYPD officers – including members of NYPD's Strategic Response Group ("SRG") – surrounded and trapped protestors in the roadway of Third Avenue just to the north of plaintiff, who was near the intersection of Third Avenue and 50th Street.[16] Plaintiff refers to this alleged tactic of surrounding protesters in order to make mass arrests as "kettling."[17]

Plaintiff claims that he observed the arrest to his north from outside the "kettle" and then attempted to document it using his cellphone.[18] At this time, defendant NYPD officer John

---

[13]        FAC ¶ 47, 79.

[14]        FAC ¶ 2.

[15]        FAC ¶¶ 85-87.

[16]        FAC ¶¶ 89-92.

[17]        FAC ¶ 181.

[18]        FAC ¶ 93.

Doe 1 allegedly struck plaintiff with his baton, knocking plaintiff's phone out of his hand.[19]  Two other NYPD officers – John Does 2 and 3 – allegedly joined Doe 1 in striking plaintiff with their batons.[20]  One or more of defendants Does 1–3 then allegedly rear-cuffed plaintiff in metal handcuffs and moved him to a nearby sidewalk.[21]

*Plaintiff's "Turn-Over" Arrest and Mass Arrest Processing*

Plaintiff claims that he remained rear-cuffed on the sidewalk for about an hour before he was loaded onto a bus for processing.[22]  During that time, plaintiff allegedly heard an unidentified NYPD officer indicate that police were unable to determine which officers had arrested him.[23]  At approximately 9:15 p.m., defendant John or Jane Doe 4 – an NYPD supervisor -- allegedly assigned defendant NYPD officer Ryan Costello to process the arrest of plaintiff and several others.[24]  Plaintiff claims that defendant Costello did not witness plaintiff's pre-arrest conduct, nor did he witness plaintiff's altercation with Does 1–3.[25]

---

[19]    FAC ¶¶ 94-99.

[20]    FAC ¶¶ 102-07, 167.

[21]    FAC ¶¶ 111, 118-19.

[22]    FAC ¶ 136.

[23]    FAC ¶¶ 128, 130.

[24]    FAC ¶¶ 129, 160.

[25]    FAC ¶¶ 130-32.

At around 10 p.m., plaintiff was loaded onto a bus with other arrestees and was driven to Brooklyn Central Booking ("BKCB") for processing.[26]  Plaintiff allegedly waited several hours to be processed.[27]  Plaintiff claims that he was released from NYPD custody at around 5 a.m., having been in custody for a total of about 8 hours.[28]

*Plaintiff's Criminal Charges*

At approximately 5 a.m. on June 4, 2020, defendant Costello allegedly provided plaintiff with an appearance ticket, also known as a "C-Summons," which required him to appear in New York City Criminal Court on September 30, 2020 to answer a charge of having violated NYCAC § 3-108.[29]  In the related accusatory instrument that defendant Costello filed, he swore that he personally had observed plaintiff violating the curfew.  This was false, plaintiff alleges, because defendant Costello had not observed any of plaintiff's pre-arrest conduct, nor had he observed plaintiff's beating and arrest.[30]  On September 8, 2020, the New York City Criminal Court dismissed the criminal proceeding against plaintiff.[31]

---

[26]
    FAC ¶¶ 86, 139.

[27]
    FAC ¶¶ 144-45.

[28]
    FAC ¶ 157.

[29]
    FAC ¶¶ 160-61.

[30]
    FAC ¶ 160.

[31]
    FAC ¶ 163.

*Procedural History*

On September 1, 2021, plaintiff filed this action in the Supreme Court of the State of New York, County of New York, naming the City of New York (the "City"), then-Mayor Bill de Blasio, then-NYPD Commissioner Dermot Shea, former Chief of Department Terence Monahan, NYPD Officer Ryan Costello, and John and Jane Does as defendants.  On December 17, 2021, defendants City of New York, de Blasio, and Shea removed the action to this Court.  (Dkt 1)

On June 13, 2022, defendants moved to dismiss portions of the amended complaint and to bifurcate all claims against the City.  (Dkt 42)  The motion did not challenge the legal sufficiency of the claims for excessive force, assault, battery, and conversion.[32]  On September 6, 2022, plaintiff withdrew: (a) all claims against defendants de Blasio, Shea, and Monahan, (b) his facial First Amendment-based challenge to the Curfew Orders, (c) his federal malicious prosecution claim, (d) his Section 1983 Equal Protection claims related to the Curfew Orders including those premised only on a selective enforcement theory, (e) his due process-based facial challenge to the Curfew Orders, and (f) his negligent hiring and supervision claims under New York law.  (Dkt 56) On September 28, 2022, this Court dismissed the withdrawn claims and excluded from consideration on this motion all materials outside the first amended complaint, save any that were incorporated by reference or otherwise properly considered.  (Dkt 58)

---

[32]   In a footnote, defendants purportedly move to dismiss all other claims in plaintiff's amended complaint, including New York State law based claims for violations of the New York State Constitution, Civil Rights Law § 79-P, respondeat superior, and false imprisonment.  *See* Dkt 44, at 1 n.2.  Yet, in their opening and reply briefs, defendants do not make any argument for dismissal of those claims.  This opinion addresses only those claims for which defendants made an argument for dismissal.

### *Discussion*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face."[33]  This standard is met where the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34]  The Court accepts as true all well-pleaded factual allegations and "draw[s] all reasonable inferences in the plaintiff['s] favor."[35]  However, this tenet is "inapplicable to legal conclusions" and to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[36]

At the motion to dismiss stage, courts may consider "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may

---

[33]
    *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570 (2007).

[34]
    *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[35]
    *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[36]
    *Iqbal*, 556 U.S. at 678.

take judicial notice."[37]  Judicial notice may be taken of documents "integral to the complaint,"[38] as well as of certain matters of public record, such as agency rules and regulations.[39]

To prevail on a Section 1983 claim, plaintiff must establish (1) a "violation of a right secured by the Constitution or laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under the color of state law."[40]

## I.   *Claims for False Arrest, Malicious Prosecution, and First Amendment Retaliation*

Defendants argue that plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation must be dismissed because there was probable cause both to arrest and to prosecute plaintiff.[41]

---

[37]

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiff has submitted a declaration of counsel and 27 exhibits in opposition to the motion. (Dkt 56) The Court takes judicial notice of Ex. 3 (Dkt 56-3) and considers Exs. 4 and 5 (Dkt 56-4; Dkt 56-5) as incorporated by reference in the complaint.  It excludes the declaration and all of the other exhibits, as it declines to convert the motion into one for summary judgment.  *See* Dkt 58 (citing Fed. R. Civ. P. 12(d)).

[38]

*Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).

[39]

*Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972).

[40]

*West v. Atkins*, 487 U.S. 42, 48 (1988).

[41]

Dkt 44, 20-24; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."); *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (probable cause to prosecute is a complete defense to a claim of malicious prosecution); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (the existence of probable cause "will also defeat a First Amendment claim that is premised on the allegation that defendants

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."[42]  In essence, defendants argue that – even drawing all reasonable inferences in plaintiff's favor -- the amended complaint establishes as a matter of law that probable cause existed to arrest and prosecute plaintiff.  The Court disagrees.

Simply put, plaintiff's amended complaint establishes that he was in public during the curfew hours.  It does not, however, establish that plaintiff "knowingly" violated the Curfew Orders as required by the plain language of the order and by NYCAC § 3-108.  Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."[43]  Drawing all reasonable inferences in plaintiff's favor, the amended complaint does not establish as a matter of law that any NYPD officer had knowledge "sufficient to warrant a person of reasonable caution in the belief" that plaintiff *knowingly* violated the Curfew Orders.  For example, plaintiff alleges that the police never ordered him to disperse.[44]  While defendants will have an opportunity to submit evidence of probable cause for plaintiff's arrest, at this stage the question is

---

prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.").

[42]  *Weyant*, 101 F.3d at 852.

[43]  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

[44]  *See In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 416 (S.D.N.Y. 2021) ("Th[e] failure [to give dispersal orders] could impact the officers' ability to prove that certain plaintiffs who were arrested violated the curfew 'knowingly,' which in turn could affect the analysis of probable cause to arrest.").

only whether plaintiff has raised a plausible inference that probable cause did not exist.[45] The Court concludes that he has.[46]

Defendants argue also that they are entitled to qualified immunity with respect to plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation.[47] The doctrine of qualified immunity shields public officials from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."[48] Arguable probable cause "exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of

---

[45]

As Judge McMahon concluded in *In re New York City Policing During Summer 2020 Demonstrations*, "[t]his court does not here hold that an officer would have to issue a dispersal order before s/he would have at least 'arguable probable cause' to arrest someone who is out after curfew without first giving a dispersal order. . . . That is an issue that will undoubtedly be litigated during this case." 548 F. Supp. 3d 383, 401 (S.D.N.Y. 2021) (internal citation omitted).

[46]

In their reply, defendants cite *Jeffrey v. City of New York*, 20-cv-2843 (NGG) (RML), (E.D.N.Y.), Dkt. No. 34, as purportedly holding that the *Jeffrey* plaintiffs' "admission that they were out past curfew was sufficient alone to establish probable cause for their arrests [under the Curfew Orders.]" Dkt 66, at 2-3. This appears to be an overreading of Judge Garaufis's holding, given that the plaintiffs in that case alleged that NYPD officers notified them of the curfew and ordered them to disperse prior to their arrests. *See* Jeffrey v. City of New York, 20-cv-2843 (NGG) (RML), (E.D.N.Y.), Dkt. No. 1, at ¶¶ 99-101, 105-06, 112-13. In all events, to the extent that Judge Garaufis held that the fact that plaintiff was in public past curfew alone was sufficient to establish probable cause for his arrest, this Court respectfully disagrees for the reasons discussed above.

[47]

Dkt 44, at 24.

[48]

*Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).

reasonable competence could disagree on whether the probable cause test was met.'"[49]   When determining a motion to dismiss on qualified immunity grounds, the plaintiff's version of the facts is assumed to be true, "without regard to any objection defendants may have to the truth of plaintiff's version of events."[51]   Thus, the ultimate question is whether a reasonable police officer, confronted with the facts as alleged by plaintiff, reasonably could have believed that his actions did not violate some settled constitutional right.

Generally, motions to dismiss on the basis of qualified immunity are disfavored,[52] and defendants seeking such relief must show that the "facts establishing arguable probable cause are 'clear from the face of the [complaint].'"[53]   Consequently, at the motion to dismiss stage, a qualified immunity defense ordinarily "faces a formidable hurdle . . . and is usually not successful."[54] Defendants have not met this demanding standard.

---

[49]

Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).

[51]

See Harris v. City of New York, 222 F. Supp. 3d 341, 348 (S.D.N.Y. 2016) (internal citations omitted).

[52]

See Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983).

[53]

Lumpkin v. Brehm, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (citing Rahman v. Schriro, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014).

[54]

Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (quoting Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191-92 (2d Cir. 2006)); see also Pourkavoos v. Town of Avon, 823 F. App'x 53, 59 (2d Cir. 2020) ("This Court has admonished '[d]efendants moving to dismiss a suit by reason of qualified immunity' that they 'would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c).'" (quoting Barnett, 523 F. App'x at 813)).

The parties' arguments on qualified immunity primarily focus on whether violation of the Curfew Orders required a dispersal order by the police that subsequently was ignored by the plaintiff. Yet the Court need not reach this issue because, accepting the amended complaint's allegations as true, the individual defendants lacked arguable probable cause that plaintiff *knowingly* violated the Curfew Orders even if a dispersal order were not required. If being in public during curfew hours, without more, were sufficient to establish arguable probable cause, the police would have *carte blanche* to arrest anyone without a dispersal order or other indication that the arrestee knowingly was in violation of the curfew.[55] A reasonable police officer could not believe that such facts would establish probable cause. Accordingly, on the facts alleged in the amended complaint, defendants did not have arguable probable cause to arrest plaintiff and their motion to dismiss is denied as to plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation.[56]

---

[55]  See *Dinler v. City of New York*, No. 04-cv-7921 (RJS) (JCF), 2012 U.S. Dist. LEXIS 141851, at *38 (S.D.N.Y. Sep. 30, 2012) (citing *Ybarra*, 444 U.S. at 91; *Rogers v. City of Amsterdam*, 303 F.3d 155, 160 (2d Cir. 2002)) ("[A]n officer must have individualized probable cause to arrest an individual and . . . mere proximity to illegal conduct does not establish probable cause with respect to an individual.").

[56]  Defendants do not argue that plaintiff's allegations otherwise fail adequately to plead all elements of his claims against the individual defendants for false arrest, malicious prosecution, and First Amendment retaliation. The Court therefore does not address these issues.

II.    *Excessive Detention Claim*

Defendants move to dismiss plaintiff's excessive detention claim "because plaintiff's detention was objectively reasonable."[57]  The Fourth Amendment "governs the procedures applied during some period following an arrest."[58]  Whether the length of a detention is reasonable under the Fourth Amendment is governed by a test of "objective reasonableness," meaning that the subjective motivations of individual officers have no bearing on whether a seizure was reasonable.[59]  In the context of pretrial detention, the Supreme Court has held that, when there has been a warrantless arrest, "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention."[60]  The Supreme Court subsequently clarified the requirement of a "prompt" judicial determination, holding that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement."[61]  In sum, "[w]hat is constitutionally required is that, except in extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within

---

[57]    Dkt 44, at 28.

[58]    *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005).

[59]    *Id.*

[60]    *Id.; see also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975).

[61]    *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

48 hours."[62]  In New York, because probable cause determinations are made at arraignments, the Fourth Amendment requires that an arrestee be arraigned within 48 hours.[63]

Plaintiff alleges that he was held in pre-arraignment detention for approximately 8 hours.  That length of detention is presumptively reasonable under the Supreme Court's 48 hour rule.[64]  Yet even if provided within 48 hours, a probable cause determination may not pass constitutional muster "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably."[65]  Examples of unreasonable delay include: (1) "delays for the purpose of gathering additional evidence to justify the arrest," (2) "a delay motivated by ill will against the arrested individual," and (3) "delay for delay's sake."[66]

Plaintiff alleges that defendants subjected him to "lengthy and unnecessary arrest processing" because he was arrested at a protest.[67]  "Rather than issuing summons[], and releasing [him] from custody, on the street, or at a local precinct," plaintiff alleges that he was subjected to a "lengthy detention[] and arrest processing at [a] centralized arrest processing location[]" because he

---

[62]

*Bryant*, 404 F.3d at 138; *see also McLaughlin*, 500 U.S. at 56 ("Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.").

[63]

*See Bryant*, 404 F.3d at 138.

[64]

*Id.*

[65]

*McLaughlin*, 500 U.S. at 56.

[66]

*Id.*

[67]

*See* FAC ¶ 27.

was arrested at a BLM protest.[68]   For example, as part of his allegedly unreasonable detention, plaintiff claims that he was forced to wait for several hours "in a long line of arrestees" outside of BKCB while rear-cuffed.[69]   Viewing the allegations in the light most favorable to plaintiff, he has raised a sufficiently plausible inference that his detention was prolonged unnecessarily as retaliation for his participation in a protest.  If true, that may qualify as a "delay motivated by ill will against" plaintiff, which could render his 8-hour detention unreasonable.[70]  Accordingly, at this early stage and on the facts alleged, plaintiff's excessive detention claim cannot be dismissed.

III.     *Fair Trial Rights Claim*

Plaintiff asserts that defendant Costello violated his right to a fair trial when Costello included in his summons that he personally observed plaintiff violate the Curfew Orders.[71]  When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable under Section 1983.[72]

Fair trial claims based on fabrication of evidence are restricted to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict,

---

68

        FAC ¶ 311.

69

        FAC ¶ 143.

70

        *McLaughlin*, 500 U.S. at 56.

71

        FAC ¶¶ 130-32, 318; *see also* Dkt 56-4; Dkt 56-5.

72

        *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

(4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.[73]  Probable cause is not a defense to a fair trial claim.[74]  Here, defendants challenge plaintiff's fair trial claim on three grounds.

      *First*, defendants argue that plaintiff did not sufficiently plead that defendant Costello fabricated information because "[p]laintiff has not identified any information was fabricated."[75]  Yet plaintiff plainly alleges that Costello fabricated his "sworn allegations that he observed [plaintiff] violate the Curfew Orders."[76]  That is sufficient to satisfy the "fabricates information" element of a fair trial claim.  Whether plaintiff can prove his allegation is another matter, but that determination will be made in subsequent proceedings.

      *Second*, defendants argue that – to the extent any information in the summons was fabricated – the summons was unlikely to influence a jury's verdict because it would be the officer's testimony, rather than the summons, that would be presented in support of the prosecution at trial.[77]  But defendants misinterpret the "likely to influence a jury's decision" element by focusing on whether the allegedly fabricated information would be likely to reach a jury.[78]  Rather, that element "is

---

[73]    *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

[74]    *Id.* at 275.

[75]    Dkt 44, at 26-27.

[76]    FAC ¶ 322.

[77]    Dkt 66, at 5.

[78]    *See Long v. Vazquez*, 14-cv-9908 (VEC), 2016 U.S. Dist. LEXIS 104837, at *14-15 (S.D.N.Y. Aug. 8, 2016) ("The fact that the allegedly fabricated information was incorporated into documents that were not themselves admissible (a criminal complaint and

properly understood to require a showing of the materiality of the false information presented – that the information would likely influence the jury *if* it arrived at a jury . . . ."[79]

Here, defendant Costello indicated on the C-Summons that he "personally observed the commission of the offense charged."[80]   Yet plaintiff alleges that defendant Costello did not observe any of his pre-arrest conduct that led to his arrest, nor did Costello receive any information from a fellow officer with personal knowledge of plaintiff's alleged offense.[81]   Indeed, plaintiff alleges that defendants cannot identify any NYPD officer that observed plaintiff's pre-arrest conduct.[82]   In such circumstances, "[w]hen the allegedly false statements . . . were the very heart of the . . . charge on which plaintiff was arrested and detained overnight, . . . a plaintiff can bring a § 1983 claim for denial of a fair trial even though the false information is contained in a document that would have been inadmissible at trial – so long as the fabricated information would have likely

---

[79]

an arrest report) is of no moment.").

*Garnett v. Undercover Officer C0039*, No. 13-cv-7083 (GHW), 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265 (2d Cir. 2016); *see also Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 140720, at *6 (S.D.N.Y. July 29, 2016) (reinstating plaintiff's fair trial claims on a motion for reconsideration and holding that materiality does not require admissible evidence); *Buie v. City of New York*, No. 12-cv-4390 (RJD) (CLP), 2015 WL 6620230, at *11 (E.D.N.Y. Oct. 30, 2015) (holding false information in a criminal complaint could form the basis of a fair trial claim, even though the complaint was inadmissible and the allegedly fabricated evidence could only otherwise reach the jury through defendants' immunity-cloaked testimony).

[80]

*See* Dkt 56-4.

[81]

FAC ¶¶ 129-132, 318.

[82]

*Id.*

influenced a jury if it had been admitted."[83]  Viewing the allegations in the light most favorable to plaintiff, the Court finds that he sufficiently pleaded the "likely to influence a jury's decision" element.

*Third*, defendants argue that plaintiff has not alleged any deprivation of liberty sufficient to maintain a fair trial claim since plaintiff never appeared in court and the matter was dismissed pre-arraignment.[84]  Defendants are mistaken.  Courts in this district have held that similar pre-arraignment detentions, albeit brief, are sufficient to satisfy the "deprivation of liberty" requirement, at least at the motion to dismiss stage.  While the relatively short duration of his alleged detention may be relevant to the extent of plaintiff's damages, if there are any, it is sufficient as a matter of law to survive defendants' motion to dismiss.[85]

For the foregoing reasons, defendants' motion to dismiss plaintiff's fair trial claim is denied.

## IV.    *Remaining Due Process Claims*

Plaintiff withdrew, and the Court has dismissed, all due process-based facial challenges to the Curfew Orders.  (Dkt 58)  Plaintiff otherwise alleges two purported as-applied challenges to the Curfew Orders because defendants Costello and Does 1–4 allegedly enforced them "in a manner

---

[83]
    *Long*, 2016 U.S. Dist. LEXIS 104837, at *16 (internal quotation marks omitted) (quoting *Buie*, 2015 WL 6620230, at *11).

[84]
    Dkt 66, at 5.

[85]
    *See Long*, 2016 U.S. Dist. LEXIS 104837, at *14 ("Plaintiff's [pre-arraignment] detention, albeit brief, satisfies the requirement that there be a deprivation of liberty."); *Collins v. City of New York*, 295 F. Supp. 3d 350, 371 (S.D.N.Y. 2018) ("Spending a number of hours in jail has been found to constitute a sufficient deprivation of liberty . . . .").

that rendered [the orders] constitutionally void for vagueness and/or [overbreadth], such that their enforcement against [p]laintiff violated [his] Due Process rights" under the Fifth and Fourteenth Amendments.[86]

As an initial matter, to the extent plaintiff asserts that defendants deprived him of due process rights in violation of the Fifth Amendment, such a claim must be dismissed because the Fifth Amendment applies only to actions by federal actors.[87] Moreover, plaintiff's purported as-applied challenge for overbreadth under the Fourteenth Amendment fails because no such challenge exists.[88] "Overbreadth challenges are a form of First Amendment challenge and an exception to the general rule against third-party standing."[89] In essence, an overbreadth claim asserts that, although a statute did not violate plaintiff's First Amendment rights, it would violate the First Amendment rights of a hypothetical third party if applied to that third party.[90] "All overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional

---

[86]    FAC ¶ 303.

[87]    *See Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 288 (E.D.N.Y. 2010); *see also LaForgia v. Hoch*, No. 15-cv-8589 (KMK), 2018 U.S. Dist. LEXIS 168798, at *11 n.2 (S.D.N.Y. Sept. 28, 2018) ("Plaintiffs appear to bring their due process claim under the Fifth and Fourteenth Amendments, . . . but because the Fifth Amendment Due Process Clause applies only to the federal government, [p]laintiffs' due process claims arise solely from the Fourteenth Amendment.").

[88]    *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d at 414.

[89]    *Id.* (citing *Broadrick v. Okla.*, 413 U.S. 601 (1973)).

[90]    *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (citing *Broadrick*, 413 U.S. at 612).

as applied to the party before the court."[91]   The Court already has dismissed all facial First Amendment and due process-based challenges to the Curfew Orders, and plaintiff's purported as-applied overbreadth challenge likewise is dismissed.[92]

The Court dismisses also plaintiff's as-applied vagueness challenge to the Curfew Orders because the orders were not vague.  A law violates the Due Process clause "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits."[93]  As-applied vagueness challenges are evaluated under a two-part test.  First, a court must determine whether the statute "gives [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited."  Second, a court must "consider whether the law provides explicit standards for those who apply it."[94]

The conduct prohibited by the Curfew Orders was clear.  The orders provided that "no persons or vehicles [could] be in public" during specified times, except "police officers, peace officers, firefighters, first responders and emergency technicians, individuals traveling to and from [or] performing essential work, people experiencing homelessness and without access to a viable shelter, and individuals seeking medical treatment or medical supplies."[95]  The orders provided that any person who "knowingly violate[d] the provisions" of the Curfew Orders "shall be guilty of a

---

[91]

    *Id.*

[92]

    *See* Dkt 58, at 1.

[93]

    *City of Chicago v. Morales*, 527 U.S. 41, 56 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)).

[94]

    *U.S. v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993).

[95]

    FAC ¶¶ 63-65.

Class B misdemeanor."[96]  On these same facts, Judge McMahon dismissed as-applied vagueness claims in *In re N.Y.C. Policing During Summer 2020 Demonstrations*, reasoning as follows:

> "Surely a person of ordinary intelligence (1) knows what it means to be in public; (2) understands the meaning of the words 8:00 (or 11:00) PM to 5:00 AM; and (3) knows whether that individual is a police officer, peace officer, firefighter, first responder, emergency technician, homeless, or is travelling to/from essential work or seeking medical treatment or supplies.  If you are out after 8:00 (or 11:00) PM, and you are not peace officer, firefighter, first responder, emergency technician, homeless, travelling to/from essential work, or seeking medical treatment, you are in violation of the curfew order and guilty of a misdemeanor."[97]

This Court concurs.  Plaintiff alleges that the Curfew Orders were vague as applied because he was charged with a violation of the orders even though "he had not been given and refused a dispersal order, and although he was not given a meaningful opportunity to disperse."[98]  While it may be that the police officers failed to provide dispersal orders, that would not have made it difficult for plaintiff or other citizens to understand what conduct was prohibited by the orders.  In other words, "[t]he conduct prohibited by the orders here challenged was being out in public between

---

[96]     FAC ¶ 64.

[97]     *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d at 415.

[98]     FAC ¶ 304.

certain hours – not failing to obey a dispersal order."[99]  Thus, the Curfew Orders were not vague, and plaintiff's due process claim is dismissed.

## V.   *Bifurcation of Claims Against the City*

Defendants move to dismiss plaintiffs' municipal liability claims or, in the alternative, to bifurcate all claims against the City.[100]

Rule 42(b) of the Federal Rules of Civil Procedure gives district courts broad discretion to bifurcate claims or issues at trial in furtherance of convenience, to avoid prejudice, or to expedite and economize.[101]  Bifurcation may be appropriate where (1) "the evidence offered on two different issues will be wholly distinct," (2) "where litigation of one issue may obviate the need to try another issue,"[102] or (3) "where one party will be prejudiced by evidence presented against another."[103]

---

[99]  *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d at 416 (citing *Morales*, 527 U.S. at 49).

[100]  *See* Dkt 44, 29-34.

At various points in their papers, defendants request bifurcation of plaintiff's "*Monell* claims," which would not include plaintiff's state law claims against the City,  and plaintiff's "municipal liability claims," which would include all claims against the City. *See id.*  Regardless, the Court exercises its discretion to consider bifurcation of all claims against the City.

[101]  Fed. R. Civ. P. 42(b); *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (decision to bifurcate is "firmly within the discretion of the trial court").

[102]  *Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466 (2d Cir. 1996).

[103]  *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).

        In this case, bifurcation is warranted on all three bases. First, as the Court of Appeals has observed, Section 1983 actions "are particularly well suited for bifurcation because the evidence needed to show a 'policy and custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official."[104] Second, bifurcation is appropriate because the City's liability depends upon a finding that the individual defendants violated plaintiff's rights.[105] Third, there is a danger that, at trial, the evidence relating to claims against the City or the individual officers "will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant."[106]

        For the foregoing reasons, the Court bifurcates all claims against the City and stays discovery concerning those claims with one exception. As set forth in the Court's order dated January 31, 2022, the parties may coordinate discovery in this action with discovery in the cases before Judge McMahon to the extent that such coordination would be helpful and appropriate.[107]

---

[104]

    *Id.* at 320.

[105]

    *See Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("'[I]f [the police officer] inflicted no constitutional injury on respondent, it is inconceivable that [the City] could be liable to respondent.'").

[106]

    *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. Feb. 7, 1989) (internal quotation marks omitted).

[107]

    Dkt 21, at 1.

### *Conclusion*

For the foregoing reasons, defendants' motion to dismiss the amended complaint and for other relief (Dkt 42) is granted to the extent that plaintiff's due process claim (Fourth Claim for Relief) is dismissed and all claims against the City are bifurcated and discovery on them is stayed except as otherwise stated herein.  The motion otherwise is denied in all respects.


SO ORDERED.

Dated:      April 4, 2023

                                    /s/      Lewis A. Kaplan

                    _____
                                    Lewis A. Kaplan
                            United States District Judge